CARAWAY, J.
 

 | T Billy Ray Henry was convicted of theft over $500 in violation of La. R.S. 14:67 and sentenced to four years at hard labor, with the first year to be served without benefit of probation, parole, or suspension of sentence. The balance of sentence was suspended and Henry was placed on two years’ supervised probation with restitution of $1,200. Henry appeals his conviction and sentence. We affirm his conviction and amend his sentence to delete the parole prohibition.
 

 Facts
 

 Billy Ray Henry was charged with theft over $500 after the landlord of his restaurant alleged that Henry authorized the removal and sale of the lessor’s restaurant equipment without the lessor’s consent. Henry’s defense attempted to show that both he and his vendee of the equipment were mistaken in the removal of the old equipment from the restaurant and had no
 
 *961
 
 intent to deprive the owner of the property.
 

 At the bench trial, Leslie Coates Martin, All Property Services office manager, testified that in November of 2005 Billy Ray Henry leased a restaurant located at 1430 Hawn Ave. in Shreveport from Main Street Commercial Development.
 
 [1]
 
 All Property Services acted as the leasing agent for the property. Martin prepared and witnessed the three-year lease which was signed by Daniel and Matt Delaney as lessors and Chandra Pugh and Henry as lessees. Paragraph 5 of the lease reads in relevant part:
 

 | pLESSEE covenants that it has fully inspected the Leased premises, is fully aware of the physical condition of said premises and hereby accepts the Leased premises, including all improvements, equipment, and systems situated thereon, in their present condition, as fully suitable for the purposes for which same were leased.
 

 Henry thereafter opened Jazzy’s Hot Spot. Martin testified that Henry was granted rent-free access to the premises for six months, but eventually opened his restaurant for business in 2006. Martin testified that by September of 2007, however, Henry was in default on the lease. Henry informed Martin that personal health conditions were going to force him to close the restaurant. Shortly thereafter, Martin walked by the restaurant and noticed that there were “no chairs, no tables, no nothing.” When Martin gained entry into the premises, she found that it had been vacated, “along with all of the equipment and furnishings in the space.” Martin identified the missing equipment from the diner which was in the premises “when [Henry] took possession of it.” Martin testified that the property that was missing “was not the property of Billy Henry, it went with the space.”
 

 Martin had made the list of contents “before Mr. Henry took possession” and put it in the file with the lease, although the list was not attached to the lease which Henry signed. The undated and unsigned list which was introduced into evidence, itemizes the following equipment that was provided “for the diner located at 1430 Hawn Ave.”:
 

 6 Burner Commercial Stove w. oven.
 

 Flat Top Grill
 

 Charbroiler
 

 2 Basket Deep Fryer
 

 Convection Oven
 

 Double Sided Prep Table
 

 Chop Block Table
 

 Ice Machine
 

 IsCooler-Glass Door (Self Serve Box)
 

 Metal Shelves
 

 Steam Table
 

 Stainless Steel Bread Warmer/Cooler
 

 Short Stainless Prep Table
 

 Stainless Ice Bin
 

 18-20ft Stainless Table
 

 Small Stainless Table
 

 9-4 top tables/w chairs (downstairs)
 

 13-4 top tables w/ chairs
 

 6-2 top tables w/chairs
 

 Martin testified that the list included “some of the items” that were in the restaurant including the “primary things” that would be replaced in order for the business to function as a restaurant. She stated that it cost $17,000 to replace the equipment and bring the premises back to code.
 

 
 *962
 
 Martin testified that she spoke with Henry after she discovered the missing items and asked him where the property was. Henry told her a friend was storing it for him. Martin testified that she informed Henry that everything that was in the diner when he leased it belonged to the diner. Henry agreed to arrange for his friend to bring the property back, but this never occurred.
 

 Martin stated that the property had been used as a restaurant for at least 30 years. She knew that Martin had brought in his own buffet or steam table. She had personally gone through the back area of the restaurant several times and did not notice any other new or different equipment. Martin testified that the majority of the equipment was permanently installed and there was no way to move or change out any of it without her employer obtaining a permit from the City. Martin testified that in addition to the stove, the vent hood, coolers, freezer and ice machine were permanent | ¿fixtures. Martin testified that most of the equipment had been in the restaurant for 10 to 20 years and had been placed there by the previous owners.
 

 Randall James, sales and leasing agent at All Property Services, testified that he began “calling around” upon learning of the missing equipment and found that a man named Bader Bader, owner of Arkla-Tex Restaurant Equippers, had been to the restaurant the day before the business closed and had removed all of the contents. Bader claimed to have purchased them from Henry. James testified that he called the police and told an officer that he had located the missing restaurant equipment. James faxed the police a copy of the lease agreement and a list of the missing equipment.
 

 Bader testified that he owns Arkla-Tex Restaurant Equippers and buys and sells new and used restaurant equipment. Bad-er testified that Henry contacted him in 2007 about buying equipment from the restaurant he was leasing. Henry told him he wanted to sell Bader “everything inside the restaurant.” Bader described the items that Henry offered him as “a complete restaurant, everything from tables and chairs to every piece of equipment inside the kitchen.” Bader recalled that most of the equipment was in working condition. He negotiated a price of $2,850 for the sale of the equipment. He identified the written agreement he executed with Henry which was introduced into evidence. The document read as follows:
 

 I Billy R. Henry have sold all contents of Jazzy’s Hot Spot to Bader Bader. Only 3-comp sink will stay. 2850.00.
 

 The document was signed by both Bader and Henry.
 

 | sBader testified that he inspected the equipment at the restaurant with Henry who “started to point out stuff [he] wasn’t going to be able to take” with him. Bader asked Henry about his authority to sell the items. Henry told him that “they were all his equipment.” After Bader removed the items from the restaurant, he took them to his warehouse and put them in storage. The following day, Bader testified that he was contacted by James who informed him that the contents of the restaurant were not Henry’s. Bader also spoke to a Shreveport police detective about the items and actually showed him some of the items in the warehouse.
 

 Bader testified, from memory, that he had taken a prep cooler, an oven with a grill, tables and chairs, miscellaneous pots and pans, but no sink or dishwasher or other fixtures. He also took a convection oven, ice machine, metal shelves, a stainless ice bin, flat-top grill, and a small stainless table. Bader testified that he did not take all of the chairs and tables.
 

 
 *963
 
 Detective Charles Thompson, a property crimes investigator with the City of Shreveport Police Department, testified that he had been contacted by James in connection with his complaint of theft of equipment and supplies from a furnished restaurant on Hawn Avenue. Detective Thompson testified that James informed him that Henry had stripped his leased restaurant of all equipment and sold it. James also told Detective Thompson that Henry told him he would attempt to get the items back, but that Henry never did return the items. James told Detective Thompson that he waited | fithree months to call him because he wanted to give Henry a period of time to honor his word.
 

 Detective Thompson went to the restaurant and recalled it to be “open space” and “just empty.” He also viewed the items that Bader had purchased. Detective Thompson testified that “they were quite in disrepair” and did not look to be a “functional commercial kitchen.” Bader told Detective Thompson that he had sold off some of the tables and chairs but that he probably would not be able to sell the remainder of the items.
 

 Detective Thompson testified that he also spoke with Henry who told him that Martin told him that “he could do with the equipment in the lease space what he wanted to do, sell it, or whatever.” Detective Thompson stated that Henry told him that he threw away certain equipment because it was damaged. That equipment included a six-burner commercial stove or oven, a flat-top grill, a charbroiler, a convection oven, and a steam table. Henry told him he did not know what happened to the glass cooler and the stainless ice bin. Henry told the police he had sold to Bader only those items he had purchased. He admitted that he sold an ice machine, metal shelves, stainless bread warmer, stainless table and a small stainless table to Bader for $2,850.
 

 Pugh, the co-lessee of the restaurant, testified on Henry’s behalf. She stated she was hired to be the manager of Jazzy’s Hot Spot and that the restaurant was in bad condition when they took it over, including the equipment. She stated she informed the lessors that they were not going to be able to use the stove because it did not pass the initial inspection by the |7fire marshal. Pugh testified that she and Henry bought a convection oven, the buffet, the warming buffet, and a few other pieces that replaced what they were unable to use in the restaurant. She also stated there were refrigerators which were not operating that the former tenant had used for storage and which also did not pass inspection by the fire marshal. Pugh testified that she and Henry informed the owners that they removed the stove.
 

 Pugh testified that on the day Bader removed the merchandise from the restaurant, she was present. She recalled that Bader had a big truck there on which he had put some of her personal property. Pugh told Bader that some of the items were her personal property, and he allowed her to remove anything she claimed was hers, including decorations, pictures, mirrors, flowers in vases, statues, glassware, tablecloths and placemats, and other small decorative items.
 

 Pugh saw items on Bader’s truck that she knew did not belong to her or Henry, and which they had no intention of taking out of the restaurant. She stated she knew they were not on the list that Bader and Henry agreed upon, although she later admitted that she had not been a witness to the sale, and had not seen a written document listing the items to be removed. She saw one of Bader’s workers take a hacksaw and cut the sink apart even though the water was still connected. She
 
 *964
 
 asked him what he was doing, and he told her he had been instructed to take everything. Pugh called Henry and told him what was
 
 going on,
 
 and he promised to return to the restaurant.
 

 After hearing the evidence, the trial judge found Henry guilty of felony theft. Henry filed motions for new trial and post verdict judgment of | ^acquittal urging insufficiency of the evidence to convict. Specifically Henry argued that the state failed to prove that he possessed the specific intent to deprive anyone of the equipment and that it was Bader who took more of the equipment “than was allotted by his agreement with Billy Henry.” Prior to sentencing, the trial court denied both motions. Thereafter, the trial judge sentenced Henry to four years at hard labor with the first year to be served without the benefit of probation, parole, or suspension of sentence. The balance of the sentence was suspended, and Henry was ordered to pay restitution of $1,200. Henry received supervised probation for a period of two years and given credit for time served. No motion for reconsideration of sentence was filed. This appeal ensued.
 

 On appeal, Henry raises claims of insufficiency of the evidence to convict and excessive sentence.
 
 [2]
 
 Specifically, Henry argues that the state failed to prove beyond a reasonable doubt that he ever took possession of or intended to permanently deprive his landlord of the described property. Henry also argues that the trial court illegally imposed one year of the sentence without benefit of parole, probation or suspension of sentence.
 

 Discussion
 

 The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 
 Jackson v. Virginia,
 
 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979);
 
 State v. Tate,
 
 01-1658 (La.5/20/03), 851 So.2d 921,
 
 cert. denied,
 
 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004);
 
 State v. Carter,
 
 42,894 (La.App.2d Cir.1/9/08), 974 So.2d 181,
 
 writ denied,
 
 08-0499 (La.11/14/08), 996 So.2d 1086.
 

 The
 
 Jackson
 
 standard, now legislatively embodied in La.C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder.
 
 State v. Pigford,
 
 05-0477 (La.2/22/06), 922 So.2d 517;
 
 State v. Dotie,
 
 43,819 (La.App.2d Cir.1/14/09), 1 So.3d 833,
 
 writ denied,
 
 09-0310 (La.11/6/09), 21 So.3d 297. The appellate court does not assess the credibility of witnesses or re-weigh evidence.
 
 State v. Smith,
 
 94-3116 (La.10/16/95), 661 So.2d 442.
 

 The trier of fact is charged to make a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law.
 
 State v. Casey,
 
 99-0023 (La.1/26/00), 775 So.2d 1022,
 
 cert. denied,
 
 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000). In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’ testimony, if believed by the trier of fact, is sufficient support for
 
 *965
 
 a requisite factual conclusion.
 
 State v. Gullette,
 
 43,032 (La.App.2d Cir.2/13/08), 975 So.2d 753.
 

 The
 
 Jackson
 
 standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct 110evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime.
 
 State v. Sutton,
 
 436 So.2d 471 (La.1983);
 
 State v. Presson,
 
 43,-215 (La.App.2d Cir.6/4/08), 986 So.2d 843;
 
 State v. Owens,
 
 30,903 (La.App.2d Cir.9/25/98), 719 So.2d 610,
 
 writ denied,
 
 98-2723 (La.2/5/99), 737 So.2d 747.
 

 When circumstantial evidence forms the basis of the conviction, such evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438. The court does not determine whether another possible hypothesis suggested by the defendant could afford an exculpatory explanation of the events; rather, when evaluating the evidence in the light most favorable to the prosecution, the court determines whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt under
 
 Jackson v. Virginia, supra; State v. Davis,
 
 92-1623 (La.5/23/94), 637 So.2d 1012,
 
 cert. denied,
 
 513 U.S. 975, 115 S.Ct. 450, 130 L.Ed.2d 359 (1994);
 
 State v. Presson, supra; State v. Owens, supra.
 

 Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency.
 
 State v. Allen,
 
 36,180 (La.App.2d Cir.9/18/02), 828 So.2d 622,
 
 writs denied,
 
 02-2595 (La.3/28/03), 840 So.2d 566; 02-2997 (La.6/27/03), 847 So.2d 1255,
 
 cert. denied,
 
 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004).
 

 La. R.S. 14:67 defines theft as follows:
 

 A. Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.
 

 The statute combines the common law crime of larceny with the offense of embezzlement. The crime of embezzlement is a fraudulent and felonious appropriation of another’s property by the person to whom it has been entrusted or into whose hands it has lawfully come. The gist of the offense is a breach of trust. The essence of the offense is the conversion of the property.
 
 State v. Hayes,
 
 01-3193 (La.1/28/03), 837 So.2d 1195;
 
 State v. Smith,
 
 194 La. 1015, 195 So. 523, 525 (1940).
 

 It is an essential element of embezzlement that the property charged to be embezzled was lawfully in the accused’s possession by fiduciary relation with the owner. Embezzlement differs from larceny in that the original taking is lawful. The gravamen of the offense is the subsequent felonious conversion of the property with the intent to convert it to the accused’s own use.
 
 State v. Hayes, supra, citing,
 
 Clark & Marshall,
 
 A Treatise on the Law of Crimes,
 
 § 12.19, p. 903 (7th ed.1967).
 

 
 *966
 
 Proof of specific intent is required to convict an accused of theft because its statutory definition includes the intent to accomplish a prescribed consequence, to permanently deprive the victim of the thing taken.
 
 State v. Johnson,
 
 368 So.2d 719 (La.1979);
 
 State v. Calloway,
 
 324 So.2d 801 (La.1975);
 
 State v. James,
 
 36,-493 (La.App.2d Cir.12/11/02), 833 So.2d 1162;
 
 State v. Eason,
 
 460 So.2d 1139 (La.App.2d Cir.1984),
 
 writ denied,
 
 463 So.2d 1317 (La.1985). Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10. Although intent is a question of fact, it may be inferred from the circumstances of the transaction and that actions of the defendant.
 
 State v. Johnson, supra.
 

 A reasonable and honest belief that one owns an interest in property precludes a finding that he intended to permanently deprive the owner of the property.
 
 State v. Rabalais,
 
 99-623 (La.App. 3d Cir.1/26/00), 759 So.2d 836.
 

 Unless it is shown that the owner lacks knowledge of the value of a movable, his testimony as to value is generally admissible, with its weight being left to the jury.
 
 State v. McCray,
 
 305 So.2d 433 (La.1974);
 
 State v. Dilworth,
 
 358 So.2d 1254 (La.1978);
 
 State v. James,
 
 36,493 (La.App.2d Cir.12/11/02), 833 So.2d 1162;
 
 State v. Johnson,
 
 31,488 (La.App.2d Cir.3/31/99), 747 So.2d 61,
 
 writ denied,
 
 99-1689 (La.l 1/12/99), 749 So.2d 653,
 
 cert. denied,
 
 529 U.S. 1114, 120 S.Ct. 1973, 146 L.Ed.2d 802 (2000).
 

 In this case, the evidence was sufficient to prove the defendant’s guilt beyond a reasonable doubt. The trial testimony clearly established that the restaurant equipment and fixtures which were in the restaurant when Henry signed the lease were removed from the premises without the owner’s authority. Martin personally observed only one or two new items purchased by Henry and used in the restaurant. Otherwise, items reflected on the Improperly list she prepared shortly after Henry took possession of the property remained on the premises until the restaurant was closed. The evidence also clearly establishes that Henry intended to sell all of the restaurant property to Bad-er, that he directed Bader as they inspected the equipment before the sale, and that Bader then removed property of the owner which had been in the restaurant since the inception of the lease. Moreover, even the defense witness, Pugh, admitted that Bad-er removed items that she knew did not belong to Henry.
 

 Henry’s claims of innocence as to his intent to permanently deprive the owner of the property were obviously rejected the by the trial court. Any issue of Henry’s intent to deprive the owner of the property was rebutted by Martin’s testimony that she informed Henry that the property he removed was not his. His failure to return those items after the confrontation and to void the sale of the items to Bader prevents Henry from claiming that his actions were a good faith error. Henry’s lies to Martin after he sold the items to Bader and later inconsistent explanations to the police also infer his guilty knowledge. The value of the items was also adequately established by the Henry/Bader invoice and the testimony of Martin, James and Bader.
 

 From this evidence, the trial judge could have reasonably concluded that Henry knowingly sold the items valued at over $500 that did not belong to him with the intent to permanently deprive the owner of the property. Viewing the evidence in a light most favorable to the prosecution, a
 
 *967
 
 rational trier of fact could have concluded beyond a reasonable doubt that a theft | uoccurred. The evidence was sufficient to support defendant’s conviction. This assignment is therefore without merit.
 

 In his second assignment of error Henry argues that the trial judge erred in imposing the first year of the sentence without benefit of parole, contrary to the sentencing provisions of La. R.S. 14:67(B)(1) which reads as follows:
 

 B. (1) Whoever commits the crime of theft when the misappropriation or taking amounts to a value of five hundred dollars or more shall be imprisoned, with or without hard labor, for not more than ten years, or may be fined not more than three thousand dollars, or both.
 

 Additionally, LSA-C.Cr.P. art. 893 provides in relevant part:
 

 When it appears that the best interest of the public and of the defendant will be served, the court, after a first or second conviction of a noncapital felony, may suspend, in whole or in part, the imposition or execution of either or both sentences, where suspension is allowed under the law, and in either or both cases place the defendant on probation under the supervision of the division of probation and parole.
 

 The trial court properly exercised its discretion in imposing the first year of Henry’s sentence -without benefit of probation or suspension of sentence. However, the provisions of La. R.S. 14:67 give the trial court no authority to impose the first year of Henry’s sentence without benefit of parole. Because the removal of the parole prohibition entails a ministerial correction of a sentencing error, we exercise our authority under LSA-C.Cr.P. Art. 882(A) to amend the sentence to delete the imposition of the first year of the sentence without benefit of parole.
 
 State v. Haynes,
 
 04-1893 (La.12/10/04), 889 So.2d 224. In all other respects, the sentence is affirmed.
 

 J^CONVICTION AFFIRMED; SENTENCE AMENDED, AND AS AMENDED, AFFIRMED.
 

 [1]
 

 . In her testimony Martin testified that the restaurant was "technically” in Bossier Parish, but was also in Caddo Parish.
 

 [2]
 

 . While not raised in a formal assignment of error, in brief, Henry alludes to the fact that the state failed to prove that the restaurant is located in Caddo Parish. However, Henry’s failure to filed a motion for quash waives any issue of venue.
 
 State v. Rideout,
 
 42,689 (La. App.2d Cir. 10/31/07), 968 So.2d 1210,
 
 writ denied,
 
 08-2745 (La.9/25/09), 18 So.3d 87.