WILLIAMS, J.
The defendant, Coty Scott Traylor, was charged by bill of information with driving while intoxicated, fourth offense, a violation of La. R.S. 14:98 and 14:98.4. Following a jury trial, the defendant was found guilty as charged. Defendant was sentenced to pay a $5,000 fine and serve 25 years at hard labor without the benefit of parole, probation or suspension of sentence. Defendant appeals his conviction and sentence. For the following reasons, we affirm the conviction and sentence.
FACTS
The record shows that in April 2016, Ruston Police Officers Hannah Laborde and Dylan Castaneda were dispatched to look for a silver Ford pickup truck in the Sexton Parking Lot. After arriving, they waited for the owner to return to the vehicle to obtain insurance information. At approximately 10:30 p.m., the officers saw defendant and another man walk across the parking lot and urinate in front of the subject truck. Both men then entered the truck, with defendant getting into the driver's side. Moments later, the truck's engine started and the brake lights came on. Officer Castaneda activated the overhead *667 lights on the patrol vehicle, pulled up next to the defendant's truck, and asked him to exit the vehicle. Defendant admitted to consuming alcohol, but said that he had called a cab and was waiting in his truck for it to arrive. Nonetheless, defendant agreed to submit to several field sobriety tests on which he performed very poorly. The defendant was arrested for operating a vehicle while intoxicated and transported to the Lincoln Parish Detention Center. Defendant submitted to an Intoxilizer 5000 exam which indicated that he had a blood alcohol concentration of .276 %.
After a trial, the jury found defendant guilty of driving while intoxicated, fourth offense. The defendant was sentenced to serve 25 years at hard labor without the benefit of parole, probation or suspension of sentence and pay a fine of $5,000. Defendant did not file a motion to reconsider the sentence. This appeal followed.
DISCUSSION
The defendant contends the evidence presented was insufficient to support the conviction of operating a vehicle while intoxicated. Defendant argues the jury erred because the state failed to prove that he was operating his vehicle when contacted by the police.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia , 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ; State v. Tate , 2001-1658 (La. 5/20/03), 851 So.2d 921, cert. denied , 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004) ; State v. Carter , 42,894 (La. App. 2 Cir. 1/9/08), 974 So.2d 181, writ denied , 2008-0499 (La. 11/14/08), 996 So.2d 1086. This standard, now legislatively embodied in La. C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford , 2005-0477 (La. 2/22/06), 922 So.2d 517 ; State v. Dotie , 43,819 (La. App. 2 Cir. 1/14/09), 1 So.3d 833, writ denied , 2009-0310 (La. 11/6/09), 21 So.3d 297.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton , 436 So.2d 471 (La. 1983) ; State v. Robinson , 50,643 (La. App. 2 Cir. 6/22/16), 197 So.3d 717.
The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith , 94-3116 (La. 10/16/95), 661 So.2d 442. A reviewing court accords great deference to the jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Casaday , 49,679 (La. App. 2 Cir. 2/27/15), 162 So.3d 578, writ denied , 2015-0607 (La. 2/5/16), 186 So.3d 1162.
The offense of operating a vehicle while intoxicated is defined, in part, as the operation of any motor vehicle when the operator is under the influence of alcoholic beverages. La. R.S. 14:98. The term "operating" is broader than the term "driving." To "operate" a vehicle in Louisiana, a person must exercise or have exercised "some control or manipulation over the vehicle, such as steering, backing, or *668 any physical handling of the controls for the purpose of putting the car in motion." State v. Lewis , 2017-0081 (La. 10/18/17), 236 So.3d 1197, 2017 WL 4681347 (citing State v. Rossi , 98-1253 (La. App. 5 Cir. 4/14/99), 734 So.2d 102, 103 ). It is not necessary that the actions have any effect or cause the vehicle to move. See State v. Jones , 97-1687 (La. App. 1 Cir. 5/15/98), 714 So.2d 819.
In the present case, Officer Hannah Laborde testified that at approximately 10:30 p.m. on April 9, 2016, while she and Officer Castaneda were waiting in the parking lot for the driver of a silver pickup truck to return to the vehicle, they observed defendant and another man, Thomas Cobb, staggering toward the subject truck. Both men approached the front of the truck and urinated. Then defendant entered the truck and sat in the driver's seat while Cobb sat in the passenger's seat. The police officers heard the truck engine start and saw the rear brake lights come on. Officer Castaneda initiated the patrol vehicle's overhead lights and drove across the parking lot to defendant's truck to intervene. Officer Laborde explained that when they arrived at defendant's truck, the brake lights went off. Officer Laborde testified that defendant had said he threw his keys on the floor of his truck, but the officers were never able to locate the keys.
Officer Dylan Castaneda testified that he saw defendant sit in the driver's side of the vehicle, heard the truck motor start and saw the headlights, tail lights and then brake lights of the truck come on. Officer Castaneda explained that they intervened to prevent the vehicle from leaving the parking lot. Officer Castaneda stated that after being advised of his rights under Miranda v. Arizona , 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), defendant admitted that he had started his truck, but said he was waiting for a cab. Officer Castaneda testified that after observing that defendant was having difficulty standing, his speech was slurred and he smelled of alcohol, he administered several field sobriety tests, including a horizontal gaze nystagmus test, a vertical gaze nystagmus test, a "walk and turn" test, and a "one leg stand" test. Officer Castaneda stated that after defendant performed poorly on the tests, he was arrested and transported to the detention center, where he submitted to an Intoxilizer 5000 test, which showed a blood alcohol concentration of .276 %. Officer Castaneda testified that he never saw a taxi approach the area during the 25 minutes the police were with defendant in the parking lot.
A dash camera in the patrol vehicle captured the stop and subsequent arrest of defendant. The video recording was played in open court and corroborated the officers' testimony that the defendant's truck was running and the brake lights were on when the police approached. The state presented testimony from a deputy clerk of the Lincoln Parish Clerk of Court, a former police officer and a former parole officer to establish that defendant was the same person with three prior convictions for driving while intoxicated.
In support of his position that sitting in the driver's seat with the engine running is not sufficient to prove his operation of the vehicle, defendant cites City of Bastrop v. Paxton , 457 So.2d 168 (La. App. 2 Cir. 1984), in which the accused was found behind the wheel of a vehicle that was running and parked in front of a bar, but claimed he had not driven the car. Paxton and his girlfriend both told police that she had driven the car to the location in front of the bar and that Paxton had asked her to move from the driver's seat and he then sat in the driver's seat while the engine was running. Police soon arrived and saw *669 the brake lights flash "for a second." This court reversed the conviction for driving while intoxicated on the basis that the circumstantial evidence did not show "sufficient handling of the controls of the car" by Paxton to prove that he operated the vehicle. However, the factual situation in City of Bastrop v. Paxton, supra , where there was no showing that the accused had turned on the ignition, can be distinguished from the situation in this case, in which defendant was the only person to get into the driver's side of the truck and the evidence shows that he started the engine and applied the brakes, which caused the lights to remain on longer than a mere second or two.
In addition, the remaining cases cited by defendant are inapposite as they involve a factual situation where a vehicle had been moved to a location and the fact finder was tasked with determining whether the defendant moved the subject vehicle to the roadway, shoulder, or parking lot while intoxicated. See State v. White , 2010-1799 (La. 7/1/11), 68 So.3d 508 ; State v. Wall , 2014-539 (La. App. 5 Cir. 12/23/14), 209 So.3d 962 ; State v. Brister , 514 So.2d 205 (La. App. 3 Cir. 1987).
The jury heard the police officers testify that they saw defendant get into the driver's side of his pickup truck, they heard the engine start and then saw the brake lights, which remained on until the police approached the defendant's truck to intervene. The jury was also able to view the dash camera video, which corroborated their testimony that defendant appeared intoxicated when contacted by the officers. Based upon this record, the jury reasonably rejected defendant's self-serving statement to police that he was waiting for a cab after turning on the ignition, and concluded that by getting into the driver's seat, starting the engine and applying the brake, defendant exercised some control or manipulation over his vehicle through his physical handling of the controls for the purpose of putting the vehicle into motion. Thus, we conclude that the evidence presented, viewed in the light most favorable to the state, is sufficient to support the jury's finding that defendant was guilty of operating his vehicle while intoxicated. Accordingly, this assignment of error lacks merit.
Removal of Juror
The defendant contends the trial court erred in removing a juror once the jury had been impaneled. Defendant argues that the seating of an alternate was reversible error because the trial court lacked sufficient cause to remove the juror.
Once a jury has been selected and sworn, the accused has a right to have his fate decided by the particular jurors selected to try him. State v. Cass , 356 So.2d 396 (La. 1977). The right of the accused to have a juror selected by him try the case is a substantial one, the improper deprivation of which is prejudicial. The doctrine of harmless error is, therefore, inapplicable. State v. Cass, supra ; State v. Burns , 35,267 (La. App. 2 Cir. 10/31/01), 800 So.2d 106.
Alternate jurors, in the order in which they are called, shall replace jurors who become unable to perform or disqualified from performing their duties. La. C.Cr.P. art. 789. The trial court has the discretion to use the services of alternate jurors rather than to grant a mistrial upon a proper finding that this is the best course of action. State v. Richardson , 33,272 (La. App. 2 Cir. 11/1/00), 779 So.2d 771, writ denied , 2000-3295 (La. 10/26/01), 799 So.2d 1151.
In State v. Cass, supra , the Louisiana Supreme Court held that a trial court erred in removing a juror who appeared to be sleeping during the defendant's trial. In doing so, the court explained that even if *670 the juror had briefly dozed off, such conduct would not be proof of disqualification so as to provide a cause for removal. The court noted there was no showing that the juror had been sleeping through a substantial part of the trial or that the defendant and the state had been afforded an opportunity to explore on the record whether the juror was unable to perform his duties.
On the second day of trial in the present case, during Officer Castaneda's testimony, the prosecutor asked the court for a bench conference where she indicated her concern that a juror, Laquanta Hargrove, was using her cell phone to send text messages. In response, the trial court held a recess and while off the record, admonished the jury as a whole to refrain from using their cell phones during the presentation of the evidence and the jury was excused for lunch. The state then moved to have Hargrove removed from the jury, but the trial court denied the request because there was no indication that Hargrove had been influenced by an outside source or that she was inattentive per the Louisiana Supreme Court's definition as applied to a sleeping juror in Cass .
A short time later, another bench conference was held after which the trial court again admonished the jury:
You are not to use your cell phone or any other communication device while you're in this courtroom.... The Jurors have the most important function in this trial. You are to be the sole judges as to the facts of this case. You need to focus your attention solely on the witness and what goes on in this courtroom. Leave your cells in the Jury Room from now on. Do not even bring them into this courtroom.... Now you've been admonished. Thank you.
A few hours later, the state reurged its request to have Hargrove removed from the jury because she was using her cell phone again. The trial court held a hearing in which Teresa Garlington, an employee with the Lincoln Parish District Attorney's Office, testified that she saw Hargrove using her cell phone to type something. Garlington stated that she saw Hargrove using her cell phone before and again after the lunch recess. Hargrove was then called to testify by the trial court. She admitted to using her cell phone to send text messages to her daughter, but said that the text messages did not contain information about the case. Hargrove also admitted that she had been admonished to refrain from using her cell phone and conceded that she had "deliberately violated" the trial court's order. The state and defense declined to ask Hargrove any questions.
The trial court, citing Hargrove's "deliberate refusal to follow the Court's orders," removed Hargrove from the jury and replaced her with the first alternate, Sh'Vante Williams, who the court noted was a person of the same gender and race as Hargrove. The trial court explained:
The juror, Ms. Hargrove, admitted ... that she did not follow my order and she intentionally didn't follow my order. Now she may [have] what she thought was a good reason but ... she may have what she thinks is a good reason to not follow my next orders or directives as well.... I'm going to dismiss Ms. Hargrove because she has violated the instructions and orders of the court. [T]hose cases I relied on indicated implicitly if not explicitly that once a juror had been admonished ... not to do something and violated that order and ... once a record was made, I think the Court then at that point has the opportunity to act and I do so act. We had a hearing. Counsel for either side ... had a chance to talk to Ms. Hargrove and did not wish to do that.
*671 In State v. Fuller , 454 So.2d 119 (La. 1984), a capital case, a jury had been sequestered and the night before the last day of trial a juror disregarded the sequestration order and went to the bar in the motel where the jurors were staying. He was discovered by a bailiff and returned to his room. The next day, the trial court held a hearing and the juror was questioned about the violation. The juror admitted to violating the sequestration order and stated that he had spoken to the barmaid, but had not discussed the case. The defendant requested a mistrial, but the trial court excused the juror and replaced him with an alternate. The defendant appealed the denial of his motion for a mistrial. The Louisiana Supreme Court affirmed, finding that the trial court's act of replacing the juror with an alternate was a proper exercise of discretion based upon the determination that the juror's willful violation of the sequestration order was a sufficient ground to disqualify him from further service. State v. Fuller, supra .
The record shows that although the trial court twice admonished the jury to refrain from using their cell phones, Hargrove deliberately violated the trial court's orders. Moreover, Hargrove's use of her cell phone was independently verified by Garlington and the trial court judge. This case is distinguishable from State v. Cass, supra , in several important aspects. Hargrove was not merely inattentive; she willfully violated the trial court's instructions twice and was communicating with a person outside of the courtroom during the presentation of evidence. Additionally, the trial court held a hearing before removing Hargrove and gave both the state and defense an opportunity to ask her questions. Under the circumstances, the trial court was reasonable in determining that Hargrove's decision to ignore the court's prior orders indicated she could decide to ignore future orders of the court and her removal was a proper exercise of the trial court's discretion. Thus, this assignment of error lacks merit.
The defendant contends the trial court erred in imposing an excessive sentence. Defendant asserts that the record does not support the abusively harsh sentence imposed.
In the absence of a motion to reconsider sentence filed in the trial court, an appellate court's review is limited to the bare claim of constitutional excessiveness. State v. Mims , 619 So.2d 1059 (La. 1993) ; State v. Smith , 46,343 (La. App. 2 Cir. 6/22/11), 71 So.3d 485, writ denied , 2011-1646 (La. 1/13/12), 77 So.3d 950. Under constitutional review, a sentence can be excessive, even when it falls within the statutory guidelines, if the punishment is so grossly disproportionate to the severity of the crime that it shocks the sense of justice and serves no purpose other than to inflict pain and suffering. State v. Dorthey , 623 So.2d 1276 (La. 1993). The trial court has broad discretion to sentence within statutory limits, and its sentence may not be set aside absent a showing of manifest abuse of that discretion. State v. Guzman , 99-1528, 99-1753 (La. 5/16/00), 769 So.2d 1158.
If the offender has previously been required to participate in substance abuse treatment pursuant to a sentence imposed on a conviction of third offense violation of La. R.S. 14:98, then the penalty for a conviction of operating a vehicle while intoxicated, fourth offense is a fine of $5,000 and imprisonment at hard labor for not less than 10 years nor more than 30 years, with at least 3 years imposed without benefit of parole, probation or suspension of sentence. La. R.S. 14:98.4(B).
In the present case, the trial court reviewed the presentence investigation ("PSI") report and the sentencing factors provided in La. C.Cr.P. art. 894.1. The *672 trial court explained that the following factors applied: (1) there was an undue risk that the defendant would commit another crime if given a suspended sentence or probation; (2) defendant was in need of correctional treatment; and (3) a lesser sentence would deprecate the seriousness of defendant's crime. The trial court noted that defendant had been arrested seven times and convicted at least six times for driving while intoxicated, but no disposition was shown for a 1995 arrest.
The trial court pointed out that defendant received probation for several of his convictions, but often performed poorly and failed to complete a mandatory substance abuse treatment program. The trial court noted that defendant had an October 23, 2006 conviction for driving while intoxicated, third offense, which could have been charged as a fourth offense. The court stated that at the time of his most recent arrest, defendant had been released from probation only two months earlier. The court noted that when interviewed for his PSI, defendant expressed no remorse for his actions. Based on his lengthy history of driving while intoxicated and the likelihood that he would commit another offense if given a lesser sentence, the trial court sentenced defendant to pay a $5,000 fine and serve 25 years at hard labor without the benefit of parole, probation or suspension of sentence.
As noted by the trial court, defendant had previously been required to participate in substance abuse treatment and thus La. R.S. 14:98.4(B)(1) applies. The defendant's 25-year sentence, the entirety of which was ordered to be served without the benefit of parole, probation or suspension of sentence, certainly falls on the upper end of the sentencing range for driving while intoxicated, fourth offense. However, as noted by the trial court, defendant's 20-year history of driving while intoxicated, including at least six convictions for the offense, and his poor performance during prior periods of probation indicate that he is unlikely to respond to treatment and is likely to commit this crime again. Given the aforementioned particular factors of this case, the sentence imposed, although harsh, does not shock the sense of justice. Thus, based upon this record, we cannot say the sentence imposed on this defendant is constitutionally excessive. Consequently, the assignment of error lacks merit.
CONCLUSION
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.