STEPHENS, J.
This criminal appeal by John Paul Flores arises from the First Judicial District Court, Parish of Caddo, State of Louisiana. Flores was convicted by a unanimous jury of operating a vehicle while intoxicated, fourth offense, in violation of La. R.S. 14:98 and 14:98.4. He was sentenced to 20 years' imprisonment at hard labor, two years to be served without the benefit of parole, probation, or suspension of sentence, and a $ 5,000.00 fine. No motion to reconsider sentence was filed. On appeal, Flores challenges his sentence and conviction. For the following reasons, we affirm Flores's conviction and sentence.
FACTS
On the evening of June 24, 2016, officers with Caddo Parish Sheriff's Office, in response to a welfare call, approached John Paul Flores at Elsie's Auto & Truck Plaza ("Elsie's") in Shreveport, Louisiana. Flores was asleep in the driver's seat of a truck parked at the gas pumps in front of the store. After waking Flores and having him step out of the vehicle, officers located the keys on the center console of the vehicle and determined that Flores was at Elsie's alone. Flores was placed under arrest for suspected operation of a vehicle while intoxicated and subsequently charged by bill of information with operating a vehicle, fourth or subsequent offense, in violation of La. R.S. 14:98 and 14:98.4.
A six-person jury trial commenced on February 14, 2018, wherein seven witnesses testified. The state and the defense stipulated to Flores's three prior convictions of operating a vehicle while intoxicated.[1] After closing arguments, the jury retired to deliberate without a copy of the jury instructions. The jury later wrote a note to the court which read, "Does the definition, by law, of 'control of a vehicle' include their sitting in driver's side with access to keys of vehicle?" The court declined to answer the jury's question, reasoning that the question was too specific and would border too closely on a comment on the evidence. Instead, the trial court elected to reread the relevant part of the original charge to the jury. After further deliberation, the jury unanimously found Flores guilty as charged. Following a presentence investigation, Flores was sentenced to 20 years' imprisonment, two years to be served without the benefit of *1203 parole, probation, or suspension of sentence, and a $ 5,000.00 fine. No motion to reconsider sentence was filed. This appeal by Flores ensued.
DISCUSSION
On appeal, Flores asserts that (1) the evidence at trial was insufficient to support his conviction; (2) the trial court erred in failing to properly instruct the jury; and, (3) the trial court erred in imposing an excessive sentence.
Trial Testimony
At trial, Detective Jeremy Edwards of the Caddo Parish Sherriff's Office testified that he was working as a patrol officer on the evening of June 24, 2016, when he was dispatched to Elsie's truck stop at 7101 Highway One in Caddo Parish concerning someone asleep in a truck at the gas pumps. Upon arrival at Elsie's, Det. Edwards made contact with Flores, who was asleep in the front driver side of a vehicle. No one else was in the vehicle. Det. Edwards knocked on the window several times to get Flores's attention. Det. Edwards stated he glanced inside the vehicle when Flores first exited but did not remember seeing any alcoholic beverages. He further testified that Flores exhibited bloodshot eyes, unsteady feet, and an alcoholic odor coming from his person. Det. Edwards attempted to conduct a field sobriety test, which Flores refused. Det. Edwards's contact with Flores at Elsie's was recorded with the mobile video surveillance device ("MVS") in his patrol car, which records everything in front of his vehicle as well as conversations. The DVD of the recording from Det. Edwards's MVS was introduced and played for the jury. Det. Edwards stated that he could not recall if Flores's vehicle was running when he approached it, but testified on cross-examination while viewing the MVS footage that as Flores exited the vehicle, he did not hear a beeping or any sound to indicate the keys were in the ignition. Det. Edwards placed a call to Flores's wife, Cynthia Flores, then transported Flores to Caddo Correctional Center ("CCC") for a chemical breathalyzer test. Det. Edwards testified that on the way to CCC, Flores was falling asleep. The interaction in the Intoxilyzer room at CCC was recorded with a camera system in the room, and the footage was introduced and played for the jury. Flores refused to sign the chemical rights form and refused to submit to the test.
Deputy James Norwood of the Caddo Parish Sheriff's Office testified that he is employed in the patrol division and was so employed on the evening of June 24, 2016. He testified that he was dispatched to Elsie's to investigate a "subject passed out in his vehicle at the gas pump." Dep. Norwood testified that he had made over 400 DWI arrests and that he looks for indications of bloodshot eyes, swaying while standing, and an alcoholic odor coming from one's person. Dep. Norwood observed Flores swaying while standing up, and that Flores's eyes were bloodshot. He described Flores's demeanor as being "kind of a jerk." Dep. Norwood was asked by Det. Edwards to check the store for Flores's wife because Flores said his wife drove him to Elsie's. Dep. Norwood checked the truck stop and the casino but could not find Flores's wife. He also testified that he did not recall seeing any alcoholic beverages inside the vehicle when he glanced inside.
Supervisor William Tuggle of the Louisiana Department of Probation and Parole identified bills of information for docket numbers 218,487 (driving while intoxicated, third offense), and 234,985 (driving while intoxicated, fourth offense). He testified that his office supervised Flores in both of those docket numbers and stated that supervision in docket number 218,487 began on May 31, 2003, and ended on May 14, *1204 2011, and supervision in docket number 234,985 began in October of 2006 and ended in January of 2014.
The defense called Cynthia Flores, who testified she had been married to Flores for five years. She stated she and Flores had gotten into an argument which led to Flores moving out. On the morning of June 24, 2016, Flores's brother, Keith, came over to help Flores load a trailer. Cynthia testified that Keith was driving when the two men left the house in Flores's vehicle, which is registered to Cynthia. She stated she received a call from the sheriff's department that afternoon and then went to Elsie's to pick up the truck in which Flores had been found. Cynthia testified that she initially told the officer on the phone that she had dropped Flores off at Elsie's, but then admitted to him that she had been home all day. She stated that a loud sound is made when you open the door of the truck while the keys are in the ignition. Cynthia also testified that you cannot put the truck out of park or steer the wheel when the keys are not in the ignition. She testified that she did not remember seeing any alcoholic beverages in the front cab of the truck but did remember there being a case of beer in the bed of the truck. She did not remember if any beer was missing from the case. Cynthia further testified that she and Flores have a joint banking account. When presented with her bank statement, Cynthia testified that there was a charge for $ 47.61 at Elsie's on June 24, 2016. When asked if she would lie for her husband, Cynthia said she would not. On cross-examination, Cynthia testified that Flores almost died from internal bleeding about two weeks after his arrest. Cynthia stated that she "lied" when she previously testified that she had not seen Flores drink after the arrest and that he actually stopped drinking after his hospitalization.
Robert Keith Flores ("Keith") testified that he is Flores's brother and that he went to Flores's house on June 24, 2016. He stated that he drove when the two left Flores's house and the whole time he was with Flores that day. Keith testified that he did not see Flores drink during the day. He stated that he and Flores went to Elsie's twice that day and that on the last time, he parked on the side of the store next to the gas pump. Keith testified that he and Flores argued because Flores wanted Keith to drive him to Ashdown, Arkansas. After the argument, Keith left Flores and the truck at Elsie's. Keith testified that he threw the keys over on the console and walked home, which is a mile and a half or longer away from Elsie's. On cross-examination, Keith was unable to state the address of the home he walked to after leaving Flores at Elsie's.
Paula Flores testified that the defendant is her father and that he and Keith came to her house on June 24, 2016. She stated that Flores brought her money to help her pay her rent and that she did not smell any alcoholic beverages on Flores when she hugged him. Paula testified that she saw Keith driving the truck when the two arrived and left her home. Paula also testified that she would probably lie for Flores but that she had no reason to lie for him during her testimony.
Flores testified that he did not drive his truck on June 24, 2016. He stated that he had an argument with his wife but could not remember what the argument was about. He testified that Keith came to help him remove his belongings from the home and that Keith was driving when the two left Flores's house. Flores testified that he did not have a driver's license but was eligible to get one when he put a breathalyzer in his truck. Flores stated that he would not drive because he knew that if he got another DWI, he would be looking at *1205 serious time. When asked where he and Keith went on June 24, 2016, Flores stated that the day was "real sketchy" for him. He testified he knew that his brother was driving, that they went to Wal-Mart and to his mother's house, but he did not remember going to his daughter's house. Flores testified that "the blanks in that day" are due to him being a "full-fledged alcoholic" and "nearly drinking himself to death." He stated he was later hospitalized for a tear in the bottom of his esophagus and the top of his stomach caused by alcohol consumption.
Flores maintained that he had not had anything to drink that day. He testified that Keith was still driving when they got to Elsie's and that Keith later left. Flores recalled going into Elsie's and buying a 30-pack of beer and flavored vodka. When shown the checking account statement from Barksdale Federal Credit Union, he confirmed that the charge for $ 47.61 was for the purchase of beer and vodka. Flores testified he then went back to the truck and started drinking. He stated he was in and out of the truck several times that evening and drank enough that he was blacking out. Flores stated that he was sitting in the driver's seat and that he did not know where the keys were but that he had not put any keys in the ignition. He testified that he did not try to move the truck in any way. Flores also testified that he drank all of his life but is not currently drinking. On cross-examination, Flores testified that he had not enrolled in any alcoholic rehabilitation as of June 24, 2014.
Sufficiency of the Evidence
In his first assignment of error, Flores asserts the jury did not have sufficient evidence to convict him of operating a vehicle while intoxicated, fourth offense, because the keys to the vehicle were not in the ignition when he was approached by officers and there was no evidence he had otherwise operated the vehicle. Flores further asserts that even if he had driven the vehicle to Elsie's, the lack of evidence showing whether he became intoxicated prior to or after operating the vehicle prohibited the jury's guilty verdict. We disagree.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia , 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ; State v.Tate , 2001-1658 (La. 5/20/03), 851 So.2d 921, cert. denied , 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004) ; State v. Ward , 50,872 (La. App. 2 Cir. 11/16/16), 209 So.3d 228. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. Ward, supra . The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith , 1994-3116 (La. 10/16/95), 661 So.2d 442 ; Ward, supra . A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. Ward, supra . The trier of fact is charged to make a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Casey, 1999-0023 (La. 1/26/00), 775 So.2d 1022, cert. denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000) ; State v. Henry , 46,406 (La. App. 2 Cir. 8/10/11), 73 So.3d 958.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court *1206 reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton , 436 So.2d 471 (La. 1983) ; State v. Robinson , 50,643 (La. App. 2 Cir. 6/22/16), 197 So.3d 717.
In cases resting on circumstantial evidence, assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. La. R.S. 15:438. When a case involves circumstantial evidence, and the jury reasonably rejects the hypothesis of innocence presented by the defendant's own testimony, that hypothesis fails, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. State v. Lewis , 2017-0081 (La. 10/18/17), 236 So.3d 1197, citing State v. Captville , 448 So.2d 676 (La. 1984). The court does not determine whether another possible hypothesis suggested by the defendant could afford an exculpatory explanation of the events; rather, when evaluating the evidence in the light most favorable to the prosecution, the court determines whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. Id. ; Henry , supra .
The offense of operating a vehicle while intoxicated is defined, in part, as the operation of any motor vehicle when the operator is under the influence of alcoholic beverages. La. R.S. 14:98. The term "operating" is broader than the term "driving." To "operate" a vehicle in Louisiana, a person must exercise or have exercised "some control or manipulation over the vehicle, such as steering, backing, or any physical handling of the controls for the purpose of putting the car in motion." State v. Lewis , supra , citing State v. Rossie , 1998-1253 (La. App. 5 Cir. 4/14/99), 734 So.2d 102. It is not necessary that the actions have any effect or cause the vehicle to move. State v. Traylor , 51,901 (La. App. 2 Cir. 2/28/18), 246 So.3d 665.
Here, based upon a review of the record in its entirety, we decline to find the presence of the keys on the center console while Flores was intoxicated in the driver's seat constituted operating the vehicle in the context of La. R.S. 14:98. Specifically, we find the circumstances do not support the finding that at the time he was approached by law enforcement, Flores was exercising control over the vehicle for the purpose of putting it into motion. However, when combined with the remaining evidence, the circumstantial evidence that Flores operated the vehicle while intoxicated, viewed in the light most favorable to the prosecution, nonetheless, supports the jury's verdict.
In order to convict, the jury had to determine that the evidence excluded every reasonable hypothesis of innocence. In an appropriate exercise of discretion and assessment of the credibility of witnesses, a reasonable trier of fact could have rejected the version of events presented by Flores and his witnesses-that Keith drove Flores to Elsie's, left him there with the truck, walked home, and that Flores then purchased alcohol at Elsie's and became drunk while sitting in the parked truck, without ever placing the keys in the ignition. It is reasonable that a rational factfinder could have found Flores and his witnesses lacked credibility. First, the totality of their testimony was unquestionably self-serving. Flores and his family all had an obvious interest in Flores's acquittal.
*1207 Second, their testimony was unreliable. Flores himself lied repeatedly to the officers about Cynthia driving him to Elsie's. Cynthia also initially lied about driving him to the store. Paula even testified that she probably would lie for her father. Keith could not state his home address, which he testified he walked to after leaving Flores at Elsie's.
Furthermore, though Flores refused to submit to the field sobriety and breathalyzer tests, the videos from the MVS and substation, which were played for the jury, corroborated the officers' testimony that Flores was unmistakably intoxicated at the time of their arrival. The possibility that Flores arrived at Elsie's sober, by way of his brother, wife, or someone else, purchased alcohol inside the store, then sat in the truck at the gas pump in the front of the store for a length of time sufficient to reach the level of intoxication evident in the videos is not sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. While there are conceivably additional exculpatory theories-Keith drove Flores, already intoxicated, to Elsie's then left him there and walked home or Flores drove himself, sober, to Elsie's and then became drunk after his arrival-a reasonable juror, likewise, would not have abused his or her discretion in rejecting these hypotheses and determining they were not sufficiently reasonable to prohibit a finding of guilt.
Based on the record, a rational factfinder could have found that the only sufficiently reasonable explanation of events was that Flores drove the vehicle himself to Elsie's while intoxicated. Moreover, there was sufficient proof at trial that the cleansing period had not lapsed between Flores's previous convictions for driving while intoxicated. Therefore, viewed in the light most favorable to the prosecution, all of the elements of driving while intoxicated, fourth offense, were proven beyond a reasonable doubt. This assignment of error is without merit.
Jury Charge
Flores asserts in his second assignment of error that the trial court failed to properly instruct the jury and thereby denied him of his right to be advised of the nature and cause of the accusation against him and his rights to due process. Flores argues that when the trial court refused to give a clarifying instruction to the jury as requested, it changed one of the elements of La. R.S. 14:98, near the end of the trial without giving prior notice to Flores of the nature and cause of the accusation. We disagree.
A party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error. La. C. Cr. P. art. 801(C). It is well established that a defendant is limited to the grounds for objection articulated at trial and a new basis for an objection may not be raised for the first time on appeal. State v. Colby , 51,907 (La. App. 2 Cir. 5/30/18), 244 So.3d 1260 ; State v. Holder , 50,171 (La. App. 2 Cir. 12/9/15), 181 So.3d 918, writs denied , 2016-0092 (La. 12/16/16), 211 So.3d 1166, 2016-0056 (La. 12/16/16), 212 So. 3d 1176.
A jurisprudential exception to the contemporaneous objection rule exists in cases where there have been fundamentally erroneous misstatements of the essential elements of the charged offense. In such cases, the Louisiana Supreme Court has adopted the view that such fundamentally incorrect jury instructions so affect the fairness of the proceedings and the accuracy of the fact-finding process that due process of law requires reversal, even in the absence of compliance with legislative *1208 procedural mandates. "Such an error is of such importance and significance as to violate fundamental requirements of due process." State v. Williamson , 389 So.2d 1328 (La. 1980). The exceptions to Article 801's objection requirement exist in situations "where the error causes such a fundamental defect in the proceedings that the defendant is deprived of a fair trial." Id.
The court shall not charge the jury concerning the facts of the case and shall not comment upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted. La. C. Cr. P. art. 806 ; State v. Lee , 39,088 (La. App. 2 Cir. 10/27/04), 888 So.2d 305. Additionally, it is not error when a trial court declines to give an additional jury instruction as to a matter outside the scope of the jury's request for additional instructions. State v. Price , 2002-0360 (La. App. 4 Cir. 4/2/03), 842 So.2d 491, writs denied , 2003-1322 (La. 11/21/03), 860 So.2d 542, 2003-1517 (La. 12/12/03), 860 So.2d 1151.
The relevant portion of the jury charge reads:
The term "operating" is broader than the term "driving." In order to operate a motor vehicle, the defendant must have exercised some control or manipulation over the vehicle - such as steering, backing or any physical handling of the controls - for the purpose of putting the car in motion. It is not necessary that these actions have any effect on the engine, nor is it essential that the car move in order for the State to prove the element of operation.
The trial court repeated this same portion of the charge to the jury in response to their written inquiry. This language directly tracks the language sanctioned in jurisprudence; thus, it clearly does not contain a fundamentally erroneous misstatement of the essential elements of operating a vehicle while intoxicated. See Traylor , supra at 667 ; State v. Presson , 43,215 (La. App. 2 Cir. 6/4/08), 986 So.2d 843 ; City of Bastrop v. Paxton , 457 So.2d 168 (La. App. 2 Cir. 1984). Therefore, no due process violation has been shown and the jurisprudential exception to the contemporaneous objection rule does not exist in this case. After extensive discussion between the trial court and counsel from both sides and multiple drafts of the jury instructions, Flores did not object to the instructions prior to the jury retiring for deliberation. Accordingly, with no showing of due process violation, Flores's objection to the jury instructions is waived.
Further, under La. C. Cr. P. art. 806, the trial court was correct in refraining from answering the jury's question. The question asked by the jury -"Does the definition, by law, of 'control of a vehicle' include their sitting in driver's side with access to keys of vehicle?"-was so specific that answering could have determined the outcome of the case, which was the jury's duty as the trier of fact. The trial court's decision to reread the original jury charge was the least harmful option to both the state and the defense. Therefore, this assignment of error is without merit.
Sentence
In his final assignment of error, Flores argues the sentence imposed by the trial court is excessive because the trial court failed to recognize the futility of a lengthy imprisonment considering he had recently been diagnosed with a medical condition that could result in his death in the event he consumed any more alcoholic beverages. Flores further asserts his sentence was excessive because the trial court inappropriately considered certain factors as aggravating. We disagree.
The trial court is given wide discretion in the imposition of sentences within *1209 the statutory limits, and the sentence imposed should not be set aside as excessive in the absence of a manifest abuse of its discretion. State v. Williams , 2003-3514 (La. 12/13/04), 893 So.2d 7 ; State v. Allen , 49,642 (La. App. 2 Cir. 2/26/15), 162 So.3d 519, writ denied , 2015-0608 (La. 1/25/16), 184 So.3d 1289.
In the absence of a motion to reconsider sentence filed in the trial court, an appellate court's review is limited to the bare claim of constitutional excessiveness. State v. Mims , 619 So.2d 1059 (La. 1993) ; State v. Smith , 46,343 (La. App. 2 Cir. 6/22/11), 71 So.3d 485, writ denied , 2011-1646 (La. 1/13/12), 77 So.3d 950. A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith , 2001-2574 (La. 1/14/03), 839 So.2d 1 ; State v. Dorthey , 623 So.2d 1276 (La. 1993) ; State v. Bonanno , 384 So.2d 355 (La. 1980) ; State v. DeBerry , 50,501 (La. App. 2 Cir. 4/13/16), 194 So.3d 657, writ denied , 2016-0959 (La. 5/1/17), 219 So.3d 332. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver , 2001-0467 (La. 1/15/02), 805 So.2d 166 ; State v. DeBerry , supra .
Upon a conviction of a fourth or subsequent offense violation of La. R.S. 14:98, the offender shall be fined $ 5,000.00 and imprisoned, with or without hard labor, for not less than 10 years nor more than 30 years. Two years of the sentence of imprisonment shall be imposed without benefit of parole, probation, or suspension of sentence. La. R.S. 14:98.4(A)(1).
Flores is limited to a constitutional excessiveness review due to his failure to file a motion to reconsider sentence. In sentencing Flores, the trial court meticulously followed the criteria set forth in La. C. Cr. P. art. 894.1, and considered both mitigating and aggravating factors and circumstances. The trial court noted that while Flores was arrested in a parking lot, it did not find Flores's theory of the case compelling or truthful and believed, instead, that the state had proven Flores had operated the vehicle on the public roadway prior to arriving there, which created a risk of death or great bodily harm to all other motorists. The trial court also rejected the testimony regarding Flores's medical condition as a sufficient guaranty that Flores's criminal conduct is unlikely to recur. Significantly, the trial court noted Flores's multiple previous convictions for operating a vehicle while intoxicated, including a prior conviction of operating a vehicle while intoxicated, fourth offense, as well as his failure in the past to satisfy the requirements of probation and parole. The trial court also noted a prior conviction for domestic abuse battery. The trial court further stated it had examined the sentences of similarly situated defendants.
Flores was sentenced to a midrange term of 20 years' imprisonment at hard labor, two years to be served without the benefit of parole, probation, or suspension of sentence, and a $ 5,000.00 fine. He was also given credit for time served. We find that in sentencing Flores, the trial court thoughtfully and appropriately weighed and considered both aggravating and mitigating factors. Furthermore, considering this is Flores's second conviction for operating a vehicle while intoxicated, fourth offense, the sentence imposed does not shock the sense of justice. This assignment of error is without merit.
CONCLUSION
For the foregoing reasons, John Paul Flores's conviction and sentence are affirmed.
AFFIRMED.
*1210 APPLICATION FOR REHEARING
Felicia Toney Williams, Frances Jones Pitman, Jeanette Giddens Garrett, Jeff Cox, James Mark Stephens - Writing.
Rehearing denied.

There was no stipulation regarding whether Flores's prior three convictions qualified under La. R.S. 14:98(C)(3), which requires in part that in order to be considered in the assessment of penalties, the prior conviction must have occurred within 10 years prior to the crime for which the defendant is being tried, but periods on probation or parole for one of the prior convictions to be used shall be excluded in computing the 10-year period.