GARRETT, J.
|tThe defendant, Lequarta R. Robinson, appeals from his conviction for armed robbery with a firearm, claiming there was insufficient evidence to support the conviction. For the following reasons, we affirm the conviction and sentence.
FACTS
On the evening of December 9, 2014, employees of Johnny’s Pizza on Gilbert Avenue in Shreveport were robbed at gunpoint by two masked men. One man was taller than the- other. A witness in the parking lot saw the men flee in an SUV and gave the police the license plate number. The vehicle was tracked to a local residence where Robinson was found with Davodrique Abney, Cameron Lee, and Syl-bryan Whitehead. A large amount of money was found at the residence, along with a rifle that had been hidden in the attic. The men were arrested. Robinson was charged with one count of armed robbery, a violation of La. R.S. 14:64, together with the firearm enhancement provision of La. R.S. 14:6413, because a gun was used in the commission of the offense. After waiving his right to a trial by jury, Robinson was tried by the court alone and was found guilty as charged. A motion for post verdict judgment of acquittal, claiming that the state failed to prove beyond a reasonable doubt that Robinson committed the. crime for which he was convicted, was denied. Robinson was sentenced to serve 10 years at hard labor, without benefit of parole, probation, or suspension of sentence. Because a firearm was used in the offense, Robinson was also sentenced to an additional five years at hard labor, without benefit of parole, probation, or suspension of sentence. The | ¡.sentences were ordered to be served consecutively, pursuant to La. R.S. 14:64.3(A).
SUFFICIENCY OF THE EVIDENCE
Robinson appealed his conviction, claiming there was insufficient evidence to prove beyond a reasonable doubt that he was guilty of the armed robbery. Specifically, he argues that he did not commit the crime and the state failed to negate any reasonable probability of misidentification. This argument is without merit.
Legal Principles
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, 2001-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Carter, 42,894 (La.App.2d Cir.1/9/08), 974 So.2d 181, writ denied, 2008-0499 (La.11/14/08), 996 So.2d 1086. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La.2/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La.App.2d Cir.1/14/09), 1 So.3d 833, writ denied, 2009-0310 (La.11/6/09), 21 So.3d 297. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to the factfinder’s decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La.App.2d Cir.2/25/09), 3 So.3d 685, writ denied, 2009-0725 (La.12/11/09), 23 So.3d 913; State v. Hill, 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758, writ denied, 2007-1209 (La.12/14/07), 970 So.2d 529; State v. Ran *720 dle, 49,952 (La.App.2d Cir.6/24/15), 166 So.3d 465.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases .must resolve any. conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and'inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doübt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Speed, 43,786 (La.App.2d Cir.1/14/09), 2 So.3d 582, writ denied, 2009-0372 (La.11/6/09), 21 So.3d 299; State v. Parker, 42,311 (La.App.2d Cir.8/15/07), 963 So.2d 497, writ denied, 2007-2053 (La.3/7/08), 977 So.2d 896; State v. Randle, supra.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is oné of the weight of the evidence, not its sufficiency. State v. Speed, supra; State v. Allen, 36,180 (La.App.2d Cir.9/18/02), 828 So.2d 622, writs denied, 2002-2595 (La.3/28/03), 840 So.2d 566, 2002-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004); State v. Randle, supra.
;[$] In the absence of internal contradiction or irreconcilable conflict with physical . evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Gullette, 43,032 (La.App.2d Cir.2/13/08), 975 So.2d 753; State v. Burd, 40,480 (La.App.2d Cir.1/27/06), 921 So.2d 219, writ denied, 2006-1083 (La.11/9/06), 941 So.2d 35.
When the key issue is the defendant’s identity as .the perpetrator, rather than whether the crime was committed, the state is required to negate any reasonable probability of misidentification. Positive identification by only one witness is sufficient to support a conviction. It is the factfinder who weighs the respective credibility of the witnesses, and this court will generally not second-guess those determinations. State v. Hughes, 2005-0992 (La.11/29/06), 943 So.2d 1047; State v. Clark, 50,137 (La.App.2d Cir.9/30/15), 181 So.3d 150. See also State v. Jackson, 50,400 (La.App.2d Cir.2/24/16), 189 So.3d 1150.
La. R.S. 14:64 provides:
A. Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.'
To convict a defendant of armed robbery, the state is required to prove: (1) a taking (2) of anything of value (3) from the person or in the immediate control of another (4) by the use or force of intimidation (5) while armed with a dangerous weapon. State v. Nealon, 50,089 (La.App. 2d Cir.9/30/15), 179 So.3d 661; State v. Jackson, supra. In order to enhance the sentence under La. R.S. 14:64.3, the state is required to prove that the dangerous weapon used in the commission of the robbery was a firearm. State v. Love, 50,238 (La.App.2d Cir.1/13/16), 185 So.3d 136.
All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly coun *721 sel or procure another to commit the crime, are principals. La, R.S. 14:24.
Discussion
At the bench trial held on June 30, 2015, the court heard testimony from numerous witnesses. On the night of the offense, Marryia Jones, an employee of Johnny’s, was reading a book in the beer garden and video poker area. Jones heard someone at the outside door, which had a magnetic lock. She thought it was a regu-' lar customer, so she went to the door. When she got close to it, the lock released and it was yanked open. Two men entered. One man was taller than the other and was wearing a black mask and a navy jacket. Jones said the taller man was about her height, six feet one inch. The other man was shorter and was wearing a brown jacket with a bandana over his face. According to Jones, the shorter man had a rifle and told her, “Don’t move bitch.” The taller man snatched the money.
Cilleria Harris was also working at Johnny’s on the night of the- robbery. During the robbeiy, she walked from.the restaurant side to the beer garden and saw Jones standing still. She heard someone say “get down.” ■ She said there were two men present. She described one man as taller than | Rthe other, about six feet tall. Harris is five feet nine inches tall. She said the taller man had the rifle and appeared to be between 18 and 19 years old. She described the other man as being small-framed, “like a little kid.” She observed that one of the men was wearing a blue and white bandana over his face.
Harris ran' back to the restaurant area and told the manager, Selena Skyles, that the restaurant was being robbed and to call the police. Skyles hit a panic button, which alerted the police. After the robbers fled, Jones came into the restaurant area, visibly shaken and upset. Skyles said-that approximately $5,800 was taken in the robbery. The' video surveillance system in the business was not working at the time of the robbery.
Shane Roth worked for a company that provided video gaming equipment to Johnny’s. He was outside the business in the parking lot on the night of the robbery and saw two slender people run out the back door of the building. He called' Skyles, who reported that she thought the business had' been robbed. He drove around the block and saw the two people running to an SUV. One of them dropped a cash drawer. A person got out of the vehicle and picked up the cash drawer and money. Roth got the license plate number , of the vehicle and gave it to the police.
Officer Jeremy Kelly of the Shreveport Police Department responded to the holdup alarm. He was informed that a Chevrolet SUV .was seen leaving the scene and was given the license plate number. The police were later able to determine that the suspects in this robbery were Robinson and Davodrique Abney.
17Corporal John Madjerick, a crime scene investigator with the Shreveport Police Department, responded to the scene of the robbery." A cash register drawer, some loose change, a few bills, and some money bands were located in the road close to Johnny’s. Photos of these items were introduced into evidence. Fingerprints were taken from the cash register drawer and a glass door at the restaurant, but no one was identified from them.
Officer Nicholas Wall of the Shreveport Police Department was patrolling in the area and responded to the robbery eall. Using the license plate number provided by Roth, he determined that the vehicle was registered to Waynetta Johnson. Officer Wall contacted Johnson’s father at the address listed on the registration. He learned that Johnson had moved to a resi *722 dence on Waters Place. Officer Wall, accompanied by Officer Kenneth Thompson, went to that location and were approached outside the residence by a young male, Sylbryan Whitehead. Whitehead told them that Johnson was his aunt and had left in the vehicle about 15 minutes prior to the officers’ arrival. The officers waited and Johnson eventually drove up in the vehicle with several other ladies. Photos of this vehicle, which matched the license number provided by Roth, were introduced into evidence.
Detective John Jackson of the Shreveport Police Department investigated the robbery. He interviewed Jones, who described the two perpetrators who came into the establishment and pointed a rifle at her. She said that one of the men was taller than the other. He also interviewed 1 ¡¿Harris, Skyles, and Roth, who were on the scene when the robbery occurred. He also talked to Johnson, who owned the vehicle used in the robbery. She claimed the vehicle had not left her sight that evening. She initially refused to give permission to search the vehicle or the residence. A cash drawer was located in the backyard of the house. Johnson did not think there was anyone in the house. She eventually gave permission to search the house to be sure there were no suspects inside.
When the house was searched, Robinson and Lee were discovered in one room of the house. Abney was found in another room, along with money totaling $5,565. A black bandana and a blue bandana were found on a dresser in the house. There was insulation lying on the floor in the hallway, indicating that the attic had been disturbed. Officers looked inside the attic opening and found the rifle. Bags containing ammunition were also recovered from the house.
Abney initially gave a false name to the police. He claimed the robbery was Robinson’s idea. Abney said he was sick that day and stayed at the house while the others committed the robbery.
Whitehead, who was 17 years old at the time of trial, testified. The attorney representing him in connection with the charges pending against him was present in court with him. Whitehead testified that when the robbery was committed, he had known Robinson for only one day. He was acquainted with Abney. Whitehead said that, at approximately 6:00 p.m. on the day of the robbery, he was at Johnson’s house with Robinson, Lee, and Ab-ney. Whitehead asked Johnson, who is his aunt, if he could borrow her 19vehicle to go visit girls. Whitehead drove the vehicle to the area and parked down the street from Johnny’s. Robinson and Abney got out of the vehicle and walked away. They returned in 10 to 15 minutes. Whitehead said Robinson was carrying a box and Abney had a rifle. Abney instructed Whitehead to “shut up and drive.” They drove back to Johnson’s residence and went inside. According to Whitehead, the police arrived a short time later. He stated that he initially lied to the police about the robbery because he was afraid of Ab-ney, who he said had a gun.
Cameron Lee, who was 17 years old at the time of trial, also testified. The attorney representing him in connection with the charges pending against him was present in court with him. Lee stated that he was with Robinson, whom he knew as “Tae,” all day on December 9, 2014. He stated that he had not previously met Robinson. They were also with Sylbryan Whitehead and Davodrique Abney, whom he knew only as “Thugga.” He had known Abney for approximately two weeks before the robbery. Lee said it was Robinson’s idea to rob Johnny’s and the four drove to *723 the restaurant in the vehicle owned by Johnson. Robinson and Abney got out of the vehicle and returned in five to 10 minutes. Robinson had a rifle and the four drove to Johnson’s house. According to Lee, Robinson and Abney took the money from the robbery into the house and counted it. Robinson hid the rifle in the attic, because he was the only one tall enough to reach it. Lee stated that the police arrived at the house and he was arrested. He admitted originally lying to the police regarding the robbery.
| inDetective Jackson testified that Robinson gave the police a statement after being advised of his Miranda rights. He said he was at Johnson’s house with Whitehead, Lee, and Abney when those three left to rob Johnny’s. Robinson claimed he stayed at the house and had no involvement in the robbery. Detective. Jackson stated that Lee, Whitehead, and Abney were all five feet nine inches tall or less. Robinson was six feet three inches tall, and was the only one tall enough to put the rifle in the attic without using a ladder.
The defendant did not testify at the trial. After all the evidence was adduced, the trial court took the matter under advisement in order to review her notes and the evidence. On July 2, 2015, the trial court announced the verdict in open court. The trial court carefully reviewed the evidence and testimony adduced at trial and concluded that Harris was a very credible and calm witness. She stated that the restaurant was robbed by two men and one was taller than the other. Harris said the taller of the two had the gun. The court observed that Jones, the victim in this matter, was very shaky and claimed that the shorter perpetrator had the gun.[1] The trial court determined that at some points during the robbery, each of the assailants had-the- gun. The trial court suspected that the taller suspect handed the gun over to the shorter man when it was time for the taller suspect “to go get the money.”
InThe trial court was convinced, beyond any doubt, that Robinson committed the offense and that the state proved all the elemente of the armed robbery and the enhancement of use'of a firearm. Robinson was found guilty as charged.
Robinson appeared before the court for sentencing on July 15, 2015. A motion for post verdict judgment of acquittal was filed and was denied, based on the finding that there was ample evidence to support Robinson’s conviction. Robinson' waived the delay for sentencing and the sentence was imposed. Robinson was properly informed of the right to appeal and the time limits for filing applications for post conviction relief.
Robinson argues there was insufficient evidence to establish that he committed this robbery. He claims that the evidence showed that the robbery was committed by two individuals, one of whom was taller than the other. Robinson is six feet three inches tall. The other three individuals who were involved in this offense were approximately five feet nine inches tall. He asserts that none of the witnesses noted a six-inch height difference between the two robbers. Therefore, he maintains that the state failed to prove that he committed this offense.
The substantial amount of evidence presented. at trial, which has been described *724 above, was sufficient to establish that Robinson committed all the elements of the crime of' armed robbery with a firearm. The state presented evidence from the employees in the restaurant, as well as the witness in the parking lot who observed the two men fleeing and provided the license plate number to the police. The state also presented testimony from persons who hawere with Robinson before, during, and after the robbery. Lee testified that going to Johnny’s was Robinson’s idea. Abney also gave a statement to the police stating that it was Robinson’s idea to commit the robbery. According to Lee and Whitehead, Robinson and Abney went into Johnny’s and returned a short time later with a rifle and money. The evidence established that. Robinson was present in the house where the money and rifle were found after the getaway car was traced to that address. The rifle was found hidden in the attic and Robinson was the only-person present who was tall enough to put it there.
Jones, the Johnny’s employee who was held up at gunpoint in this offense, stated that one of the robbers was taller than the other and the taller one was about her height. Jones is six feet one inch tall and Robinson is six feet three inches tall. Harris, who was also working at the restaurant when the robbery occurred, saw the assailants and confirmed that one was taller than the other and the taller man was approximately six feet tall. Detective Jackson testified that Abney, Whitehead, and Lee were all about five feet nine inches tall. This demonstrates that none of these three would appear to be appreciably taller than the others. Also, Whitehead and Lee stated that they had just met Robinson on the day of the offense. It would have been 'highly unlikely that Robinson would have stayed behind at the home of Whitehead’s aunt, while the others went to commit a robbery.
Viewing the- evidence in the light most favorable to the prosecution, the state clearly negated any reasonable possibility of misidentifieation. Because this was a bench trial, we have the benefit of the trial court’s | ^analysis of the evidence and credibility determinations. The trial court was convinced, beyond a reasonable doubt, that Robinson was guilty. Based upon our review, we find that the record clearly supports the verdict.
CONCLUSION
For the reasons stated above, the conviction and sentence of the defendant, Leq-uarta R. Robinson, for armed robbery with a firearm are affirmed.
AFFIRMED.

. The evidence showed that Jones was, understandably, very traumatized by the armed robbery. She was described as being hysterical and in a scared and frantic state at the scene. Emergency medical personnel were called to attend to her. When the trial occurred over six months later, she testified she was still experiencing difficulty sleeping and did not want to have to relive the event.