GARRETT, J.
*1207 The defendant, Ollandis Derrell Turner, was convicted by a jury of armed robbery. He was ordered to serve 60 years at hard labor, without benefit of parole, probation, or suspension of sentence. On appeal, Turner seeks to have his conviction overturned, arguing that the evidence was insufficient to support his conviction, his trial counsel was ineffective, and the prosecutor made improper remarks during closing arguments. For the following reasons, we affirm the conviction and sentence.
FACTS
On August 12, 2016, shortly before 11:00 p.m., Blanton Burgess, a college student working part-time as a pizza delivery driver for Domino's Pizza, was delivering six pizzas to a room at the Motel 6 in Monroe, Louisiana. There was no answer when he knocked on the door. He called the telephone number from which the order had been placed. A man answered and said he was in the motel lobby, but would come to the room.
Burgess was approached by an African-American man. Burgess saw the man reach behind him and thought he was retrieving his wallet to pay for the pizzas. Instead, the man produced a revolver and took the pizzas, Burgess's cell phone, and $ 15.00 in cash. Burgess went back to Domino's and police were called.
The serial number of the cell phone was furnished to police. The next day, August 13, 2016, Turner sold the cell phone at an ecoATM kiosk at a Walmart store in Monroe. He was photographed and furnished his Louisiana photo identification card during the transaction. Using the serial number, the police recovered the phone and the sale was linked to Turner. Burgess was shown a photo lineup and picked Turner's picture as the individual who robbed him.
Turner was arrested and charged with one count of armed robbery.[1] He was tried by a jury and convicted as charged on June 15, 2017. Turner was sentenced to serve 60 years at hard labor without benefit of parole, probation, or suspension of sentence. He was also ordered to pay restitution to Domino's in the amount of $ 58.21. No motions for new trial, post verdict judgment of acquittal, or appeal were filed. Turner filed a pro se application for post conviction relief ("PCR"), seeking an out-of-time appeal, which was granted by the trial court on May 31, 2018. Counsel was appointed to represent Turner on appeal. Turner also filed his own pro se brief on appeal.
SUFFICIENCY OF THE EVIDENCE
On appeal, Turner's appellate counsel argues that there is insufficient evidence to support his conviction for armed robbery because the prosecution failed to negate *1208 any reasonable probability of misidentification. This argument is without merit.
Legal Principles
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia , 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ; State v. Tate, 2001-1658 (La. 5/20/03), 851 So.2d 921, cert. denied , 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004) ; State v. Robinson , 50,643 (La. App. 2 Cir. 6/22/16), 197 So.3d 717, writ denied , 2016-1479 (La. 5/19/17), 221 So.3d 78. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the factfinder. State v. Pigford , 2005-0477 (La. 2/22/06), 922 So.2d 517 ; State v. Dotie , 43,819 (La. App. 2 Cir. 1/14/09), 1 So.3d 833, writ denied , 2009-0310 (La. 11/6/09), 21 So.3d 297 ; State v. Robinson , supra . The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith , 94-3116 (La. 10/16/95), 661 So.2d 442.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. State v. Robinson , supra . Direct evidence provides proof of the existence of a fact, for example, a witness's testimony that he saw or heard something. State v. Wooten , 51,738 (La. App. 2 Cir. 2/13/18), 244 So.3d 1216. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton , 436 So.2d 471 (La. 1983) ; State v. Robinson , supra .
Circumstantial evidence is defined as evidence of facts or circumstances from which one might infer or conclude the existence of other connected facts. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Walker , 51,217 (La. App. 2 Cir. 5/17/17), 221 So.3d 951, writ denied , 2017-1101 (La. 6/1/18), 243 So.3d 1064.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Robinson , supra ; State v. Allen , 36,180 (La. App. 2 Cir. 9/18/02), 828 So.2d 622, writs denied , 2002-2595 (La. 3/28/03), 840 So.2d 566, 2002-2997 (La. 6/27/03), 847 So. 2d 1255, cert. denied , 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004). A reviewing court accords great deference to the factfinder's decision to accept or reject the testimony of a witness in whole or in part. State v. Robinson , supra ; State v. Sims , 49,682 (La. App. 2 Cir. 2/27/15), 162 So.3d 595, writ denied , 2015-0602 (La. 2/5/16), 186 So.3d 1161. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Robinson , supra ; State v. Gullette , 43,032 (La. App. 2 Cir. 2/13/08), 975 So.2d 753 ;
*1209 State v. Burd , 40,480 (La. App. 2 Cir. 1/27/06), 921 So.2d 219, writ denied , 2006-1083 (La. 11/9/06), 941 So.2d 35.
La. R.S. 14:64 provides:
A. Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
To convict a defendant of armed robbery, the state is required to prove: (1) a taking (2) of anything of value (3) from the person or in the immediate control of another (4) by the use or force of intimidation (5) while armed with a dangerous weapon. State v. Robinson , supra ; State v. Nealon , 50,089 (La. App. 2 Cir. 9/30/15), 179 So.3d 661, writ denied , 2015-1964 (La. 10/28/16), 208 So.3d 375 ; State v. Jackson , 50,400 (La. App. 2 Cir. 2/24/16), 189 So.3d 1150.
When the key issue is the defendant's identity as the perpetrator, rather than whether the crime was committed, the state is required to negate any reasonable probability of misidentification. Positive identification by only one witness is sufficient to support a conviction. It is the factfinder who weighs the respective credibility of the witnesses, and this court will generally not second-guess those determinations. State v. Hughes , 2005-0992 (La. 11/29/06), 943 So.2d 1047 ; State v. Robinson , supra ; State v. Clark , 50,137 (La. App. 2 Cir. 9/30/15), 181 So.3d 150, writ denied , 2015-2049 (La. 11/29/16), 211 So.3d 386. See also State v. Jackson , supra .
In seeking to suppress an identification, the defendant must prove the procedure used was suggestive and that the totality of the circumstances presented a substantial likelihood of misidentification. La. C. Cr. P. art. 703(D) ; State v. Martin , 595 So.2d 592 (La. 1992) ; State v. Stokes , 36,212 (La. App. 2 Cir. 9/18/02), 828 So.2d 631, writ denied , 2002-2807 (La. 9/5/03), 852 So.2d 1023 ; State v. Davis , 27,961 (La. App. 2 Cir. 4/8/96), 672 So.2d 428, writ denied , 97-0383 (La. 10/31/97), 703 So.2d 12.
The Louisiana Supreme Court has held that, even if the identification could be considered suggestive, it is the likelihood of misidentification that violates due process, not merely the suggestive identification procedure. State v. Williams , 375 So.2d 364 (La. 1979) ; State v. Davis , supra ; State v. Doucette , 2017-0501 (La. App. 4 Cir. 5/23/18), 243 So.3d 704. Fairness is the standard of review for identification procedures, and reliability is the linchpin in determining the admissibility of identification testimony. Manson v. Brathwaite , 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). Even a suggestive, out-of-court identification will be admissible if it is found reliable under the totality of circumstances. State v. Guy , 95-0899 (La. App. 4 Cir. 1/31/96), 669 So.2d 517, writ denied , 96-0388 (La. 9/13/96), 679 So.2d 102. If a suggestive identification procedure has been proved, a reviewing court must look to several factors to determine, from the totality of the circumstances, whether the suggestive identification presents a substantial likelihood of misidentification at trial. State v. Martin , supra ; State v. Doucette , supra .
The U.S. Supreme Court has approved several factors for evaluating whether the reliability of an identification may outweigh the suggestiveness of the procedures employed. See Manson v. Brathwaite , supra ; Neil v. Biggers , 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). The factors are: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the victim's prior description of the criminal, (4)
*1210 the level of certainty demonstrated at the confrontation, and (5) the time between the crime and the confrontation. See State v. Martin , supra .
An identification process is suggestive if it unduly focuses a witness's attention on the suspect. State v. Hopkins , 39,258 (La. App. 2 Cir. 3/2/05), 897 So.2d 854, writ denied , 2005-1238 (La. 12/16/05), 917 So.2d 1107. For example, distinguishing marks on the photos may single out the accused, or suggestiveness can arise if sufficient resemblance of physical characteristics and features does not reasonably test identification. State v. Davis , supra ; State v. Tucker , 591 So.2d 1208 (La. App. 2 Cir. 1991), writ denied , 594 So.2d 1317 (La. 1992).
Strict identity of physical characteristics among the persons depicted in a photographic array is not required; however, there must be sufficient resemblance to reasonably test the identification. The question for a reviewing court is whether the procedure is so conducive to irreparable misidentification that due process was denied. Manson v. Brathwaite , supra ; State v. Hopkins , supra .
Discussion
Burgess testified that, in 2016, he was a student at Louisiana Tech University and worked as a pizza delivery driver for Domino's Pizza. Before he was hired, he was shown a training video in which employees were instructed that, if they were ever robbed, they were to cooperate and give the robber what he asked for. Drivers were not allowed to carry more than $ 20 on their person in case of a robbery.
Upon receiving an order, the driver boxed it up, put it in a pizza bag, and received a tag with the phone number and address of the person who placed the order. Burgess stated that the tag did not always have the name of the customer. On August 12, 2016, Burgess was working the night shift at Domino's. He was assigned to make a delivery of six pizzas to Room 258 of the Motel 6 at around 10:30 p.m. Because pizza deliveries were running behind, he had earlier called the telephone number associated with the order to inform the customer that the delivery would be delayed. He spoke with a man.
Burgess was familiar with the motel because he frequently made pizza deliveries there. The room was on the second floor at the back of the motel, facing away from the highway. Burgess said he had never made a delivery to that area of the motel before. Burgess stated that the lights in the parking lot illuminated the area. When Burgess finally arrived at the motel with the pizza, he knocked on the door of Room 258, but received no answer. He again called the telephone number and spoke to the same man. The man said he had gone to the motel lobby, but he would come and get the pizzas. A man approached on the second floor walkway of the motel and Burgess walked up the stairs to meet him. The man sounded the same as the voice on the telephone. Burgess told the man the amount due for the pizzas. The man appeared to be reaching behind him for his wallet but instead, he pulled out a snub-nosed stainless steel revolver with a wooden black or brown handle. He pointed the gun at Burgess's chest and stomach. The man ordered Burgess to take out all of his belongings and place them on top of the pizza bag on the ground. Burgess placed his cash and cell phone on the pizza bag and opened his wallet to show the man that it was empty. The man instructed Burgess to take the password lock off the phone. Burgess complied. The man took the phone, the money and the pizzas and gave Burgess's wallet back to him. He told Burgess to leave and said he would be watching, so to "not try anything funny."
*1211 Burgess got into his vehicle, drove back to Domino's, and called the police. He described the robber to the police and told officers that he was an African-American male between six feet and six feet three inches tall. Burgess testified that he was shown a photographic lineup about 2½ weeks after the robbery. The police told Burgess to "pick out if I saw someone that looked familiar." He was told that if he did not see anyone familiar, not to point anyone out. Burgess said his goal was not to pick someone out, but to see if there was someone he recognized. He said he was able to identify the picture of Turner as the robber in "not even two seconds." Burgess said that there was no doubt in his mind that Turner was the man who robbed him. According to Burgess, he was not told whether he "got it right" and was not given any identifying information about the person he picked.
Burgess also identified Turner in court as the robber. Also, at the trial, Burgess was shown a picture of Turner taken the day after the robbery at the ecoATM kiosk at Walmart where Turner sold Burgess's cell phone. Burgess said the person in the picture was the same individual who robbed him and noted that the man had the same covering or "do-rag" on his head and the same amount of facial hair, but was wearing a different color shirt than he was wearing at the time of the robbery. Burgess again stated that there was no doubt that Turner was the person who robbed him.
On cross-examination, Burgess was asked about small, tear-shaped tattoos at the outer corners of Turner's eyes which were apparent on the photograph used in the photographic lineup. Burgess was asked why he did not tell police about the tattoos. Burgess said they were dark tattoos on a dark complexion that could easily be mistaken for moles or a smudge of dirt on the face. Burgess noted that the tattoos were hard to see, even in court, looking at Turner.
Burgess testified that, at the time of the robbery, he was nervous and was worried that he would be shot. Burgess said, "I did not want to die delivering a pizza." He stated that he did not take time to count the moles, freckles, or tattoos on the robber's face, but was "more worried about getting out of there alive." Burgess again testified that he had no doubt that Turner was the man who robbed him.
Detective Chris Turner of the Monroe Police Department testified that he is a crime scene investigator. This robbery occurred on a Friday night and the following Tuesday, Detective Turner went to the motel to obtain video surveillance recordings and to look for other evidence. On the video, the robber is seen pacing around the motel and, at one point, was smoking a cigarette. When Burgess arrived, the robber threw the cigarette down. Detective Turner went to the area where the cigarette was discarded and retrieved three cigarette butts. These were submitted to the North Louisiana Criminalistics Laboratory for analysis. The results from two of the cigarette butts were inconclusive and the third matched an African-American female. DetectiveTurner downloaded the video surveillance recording and it was admitted into evidence and played for the jury. Detective Turner stated that the defendant could not be positively identified from the video.
Officer Ortiz Miley of the Monroe Police Department was dispatched to investigate the armed robbery on August 12, 2016. Shortly after the robbery, he was provided with the serial number of the cell phone that was taken. The serial number was placed on the National Crime Information Computer database to alert other agencies that the phone had been stolen.
*1212 Detective Dewayne Crowder of the Monroe Police Department helped with the initial investigation of this crime. The information regarding the phone's serial number led to another database, Leads Online, where searches are made for stolen property. The ecoATM kiosk where Turner sold Burgess's cell phone uses the Leads Online database. Using the serial number, it was determined that the day after the robbery, Turner sold the cell phone at an ecoATM kiosk in Monroe. When he sold the phone, he was photographed and furnished his Louisiana identification card which was scanned. A live person monitored the kiosk to ensure that the identification furnished matched the person selling the item. Pictures of Turner at the kiosk were introduced into evidence along with a copy of his identification card.
A database called Think Stream was used to access photographs of people on file with the State of Louisiana. Based on Turner's characteristics, five photographs were chosen that closely resembled Turner to comprise the six-person photographic lineup. The lineup was shown to Burgess, who quickly identified Turner as the robber. At that point, Detective Crowder was assigned to another case and Detective Tommy Rhodes took over this investigation.
Detective Rhodes testified that he used the telephone number associated with the pizza order to search Facebook. The number was linked to a Facebook page with the name "Darrell Jones."[2] The date of birth on the Facebook page was January 17, 1998. Detective Rhodes could not find anyone with that date of birth and opined that the name used on the page was fake. Rhodes determined that the pictures of the owner of the Facebook page and the photos of the person who sold the cell phone depicted Turner.
Turner admits that he sold Burgess's phone at the ecoATM kiosk, but he denies that he committed the robbery. His appellate counsel argues that there was no physical evidence connecting Turner to the robbery. He could not be identified from the video surveillance recording, and the cigarette butts collected and analyzed did not link him to the location of the robbery. Turner contends that Burgess's eyewitness identification was the only evidence linking the defendant to the robbery. He argues that the identification was not reliable because the photographic lineup was suggestive.[3]
Turner contends that the lineup was suggestive because his face was larger in the frame of the photograph than the others. He claims that this unduly focused attention on him. He also asserts that the suggestive photographic lineup tainted Burgess's in-court identification of the defendant as the robber. He argues that *1213 Burgess only observed the robber for two minutes in a poorly lit parking lot and his attention was largely focused on taking the password off his cell phone. Turner points out that Burgess did not describe to the police the tattoos on Turner's face. Turner also notes that the telephone number associated with the pizza order was researched only on Faceboook; it was not linked to him by any other means.
We reject Turner's arguments. We have observed the photographic lineup shown to Burgess and do not find it to be suggestive. The individuals in the lineup all have similar complexions, hairstyles, and facial hair to Turner. The backgrounds of the pictures are the same. We do not find that Turner's image in the photograph was so much larger than the others that it attracted undue attention to him. The face of the individual next to Turner was almost as large as Turner's and bears a remarkable resemblance to him. We also note that Burgess was able to quickly identify Turner as the robber from the lineup. His identification was sure and unwavering. Burgess testified that it was light enough to see Turner's face and he was standing only two or three feet away from him during the robbery. The failure of Burgess to note the tattoos on Turner's face is not significant. The tattoos are small and dark. On Turner's dark complexion, they are not prominent. As Burgess testified, they could have been moles or smudges of dirt on the face.[4] Burgess's failure to note the tattoos in his initial description of the robber to the police does not erode the credibility of his identification of Turner.
Based upon this record, we do not find that the photographic lineup was suggestive, and we conclude that there is no likelihood of misidentification. The prosecution provided ample evidence for the jury to conclude, beyond a reasonable doubt, that Turner committed this robbery. Burgess was robbed of his cell phone, money and pizzas, at gunpoint, and he conclusively identified Turner as the person who committed the robbery. The jury determined that Burgess's testimony was credible. We accord great deference to the factfinder's decision to accept Burgess's testimony. His testimony contains no internal contradictions or irreconcilable conflict with the physical evidence. Burgess testified that he observed Turner at the time of the robbery from two to three feet away. He was able to observe Turner's face, he gave an accurate description of Turner to the police, he was completely certain of his identification, and the time between the commission of the crime and Burgess's observation of the photographic lineup was only 2½ weeks. The jury found Burgess's testimony to be credible. His testimony alone is sufficient to support Turner's conviction.
We also note that Turner was in possession of Burgess's cell phone and sold it the day after the robbery. Further, the telephone number used to order the pizzas was linked to a Facebook page purporting to belong to Turner using a different name and containing pictures of Turner. While these factors alone might be insufficient to convict Turner, this circumstantial evidence lends support to Burgess's identification of Turner as the robber.
INEFFECTIVE ASSISTANCE OF COUNSEL
In his pro se brief, Turner argues that his trial court counsel was ineffective for *1214 not filing a motion to suppress the suggestive lineup and for not objecting to this evidence at trial. These arguments are without merit.
Legal Principles
Both the Louisiana and federal constitutions guarantee a criminal defendant's right to the effective assistance of counsel. U.S. Const. art. VI; La. Const. art. 1, § 13 ; Gideon v. Wainwright , 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) ; State v. Brooks , 94-2438 (La. 10/16/95), 661 So.2d 1333 ; State v. Mansfield , 50,426 (La. App. 2 Cir. 2/24/16), 190 So.3d 322. When a defendant seeks reversal of a conviction based on ineffective assistance of counsel, he must establish two separate elements to succeed. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment to the U.S. Constitution. Strickland v. Washington , 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. It is not sufficient for the defendant to show the error had some conceivable effect on the outcome of the proceedings. Rather, he must show that, but for counsel's unprofessional errors, there is a reasonable probability the outcome of the trial would have been different. Strickland v. Washington , supra ; State v. McGee , 2018-1052 (La. 2/25/19), 264 So.3d 445 ; State v. Moran , 47,804 (La. App. 2 Cir. 4/10/13), 135 So.3d 677, writ denied , 2013-1052 (La. 11/15/13), 125 So.3d 1101 ; State v. Mansfield , supra.
An assessment of an attorney's performance requires his conduct to be evaluated from counsel's perspective at the time of the occurrence. A reviewing court must give great deference to trial counsel's judgment, tactical decisions, and trial strategy, strongly presuming he has exercised reasonable professional judgment. State v. Moore , 48,769 (La. App. 2 Cir. 2/26/14), 134 So.3d 1265, writ denied , 2014-0559 (La. 10/24/14), 151 So.3d 598 ; State v. Mansfield , supra.
The filing and pursuit of pretrial motions is squarely within the ambit of the attorney's trial strategy, and counsel is not required to engage in efforts of futility. State v. Lewis , 51,672 (La. App. 2 Cir. 11/15/17), 245 So.3d 233 ; State v. Anderson , 51,603 (La. App. 2 Cir. 9/27/17), 244 So.3d 640, writ denied , 2017-1913 (La. 6/1/18), 243 So.3d 1062.
Generally, a claim of ineffective assistance of counsel is properly raised in an application for PCR in the trial court. State ex rel. Bailey v. City of West Monroe , 418 So.2d 570 (La. 1982) ; State v. Lewis , supra ; State v. Mansfield , supra ; State v. Ellis , 42,520 (La. App. 2 Cir. 9/26/07), 966 So.2d 139, writ denied , 2007-2190 (La. 4/4/08), 978 So.2d 325. This is because PCR creates the opportunity for a full evidentiary hearing under La. C. Cr. P. art. 930. State v. Mansfield , supra. When the record is sufficient, the claim may be resolved on direct appeal in the interest of judicial economy. State v. Ratcliff , 416 So.2d 528 (La. 1982) ; State v. Lewis , supra ; State v. Mansfield , supra.
Discussion
The record in this matter is sufficient to resolve Turner's claim on appeal. He argues that, before his trial, attorney James Ross was appointed to represent him. Turner claims that Ross was dismissed for "no explained reason" and David Summersgill *1215 was appointed to the case days before the trial. He asserts that Summersgill had no time to prepare for trial or make any pretrial investigations or motions. He contends that the failure of his trial counsel to file a motion to suppress the photographic lineup or to object to its use at trial constituted ineffective assistance of counsel. These arguments simply are not supported by the record.
The trial court minutes show that Turner's initial court appearance occurred on August 31, 2016, at which time the Public Defender's Office was appointed to represent him. Turner appeared in court on October 11, 2016, represented by Summersgill, and Ross was enrolled as counsel of record. However, the minutes fail to show that Ross ever appeared on behalf of Turner. At the next appearance on November 16, 2016, and at all subsequent appearances thereafter, with the exception of the preliminary examination hearing, Summersgill appeared and represented Turner. At the preliminary examination hearing, attorney Jay Nolen appeared in Summergill's place to represent Turner.
Further, Turner's claim that the photographic lineup was unduly suggestive and deprived him of a fair trial, and that the failure to object to the lineup constituted ineffective assistance of counsel, is not supported by the record. As set forth above, the constitutional guarantee of effective assistance of counsel does not require an attorney to take unnecessary actions or engage in efforts of futility. A criminal defendant who alleges that his attorney's performance was deficient based upon his failure to perform specific acts must demonstrate that specific prejudice resulted from this failure. State v. Johnson , supra . Above, we considered the arguments regarding misidentification and the photographic lineup, even though there was no motion to suppress and no objection at trial. The photographic lineup was not suggestive. There was no error in presenting the lineup at trial, and Burgess's eyewitness identification was not tainted. Turner has not demonstrated any prejudice and has not shown a reasonable probability that, but for counsel's failure to file a motion to suppress, the result of the trial would have been different. Based upon our finding regarding the photographic lineup, we reject Turner's claim of ineffective assistance of counsel. See State v. Johnson , supra ; State v. Moore , supra .
CLOSING ARGUMENT
Turner argues in his pro se brief that the prosecutor violated due process by making improper remarks in closing argument that appealed to the jury's passions and prejudices. This argument is without merit.
Legal Principles
La. C. Cr. P. art. 774 provides:
The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
The argument shall not appeal to prejudice.
The state's rebuttal shall be confined to answering the argument of the defendant.
A prosecutor retains considerable latitude in making closing arguments. State v. Taylor , 93-2201 (La. 2/28/96), 669 So.2d 364, cert. denied , 519 U.S. 860, 117 S.Ct. 162, 136 L.Ed.2d 106 (1996) ; State v. Smith , 31,955 (La. App. 2 Cir. 5/5/99), 740 So.2d 675, writ denied , 2000-1404 (La. 2/16/01), 785 So.2d 840. The argument is not to appeal to prejudice. The Court has warned prosecutors they are not to turn closing argument into a plebiscite on crime.
*1216 State v. Eaton , 524 So.2d 1194 (La. 1988), cert . denied , 488 U.S. 1019, 109 S.Ct. 818, 102 L.Ed.2d 807 (1989).
Although resort to personal experience goes beyond the proper scope of a closing argument, before a case will be reversed on this basis, it must be shown that the remarks influenced the jury and contributed to the verdict. State v. Johnson , 45,828 (La. App. 2 Cir. 1/26/11), 57 So.3d 1087, writ denied , 2011-0433 (La. 12/16/11), 76 So.3d 1198.
Even if the prosecutor exceeds these bounds, a reviewing court will not reverse a conviction due to an improper remark during closing argument unless the court is thoroughly convinced the argument influenced the jury and contributed to the verdict, as much credit should be accorded the good sense and fairmindedness of jurors who have seen the evidence and heard the arguments, and have been instructed repeatedly by the trial judge that arguments of counsel are not evidence. State v. Reed , 2014-1980 (La. 9/7/16), 200 So.3d 291, cert . denied , --- U.S. ----, 137 S.Ct. 787, 197 L.Ed.2d 258 (2017). See also State v. Casey , 1999-0023 (La. 1/26/00), 775 So.2d 1022, cert . denied , 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000) ; State v. Hart , 96-0697 (La. 3/7/97), 691 So.2d 651 ; State v. Taylor , supra ; State v. Smith , supra ; State v. Eaton , supra ; State v. Bates , 495 So.2d 1262 (La. 1986), cert. denied , 481 U.S. 1042, 107 S.Ct. 1986, 95 L.Ed.2d 826 (1987) ; State v. Jarman , 445 So.2d 1184 (La. 1984) ; State v. Messer , 408 So.2d 1354 (La. 1982) ; State v. Mills , 505 So.2d 933 (La. App. 2 Cir. 1987), writ denied , 508 So.2d 65 (La. 1987).
The contemporaneous objection rule applies to claims that the prosecutor made an improper closing argument. State v. Taylor , supra ; State v. Williams , 46,674 (La. App. 2 Cir. 12/14/11), 81 So.3d 220. An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. La. C. Cr. P. art. 841. State v. Jones , 49,948 (La. App. 2 Cir. 9/30/15), 178 So.3d 1075.
Discussion
There was no contemporaneous objection to the state's comments during closing argument. Therefore, Turner cannot raise a claim related to those arguments on appeal. However, even if he had made such an objection, under the facts presented here, we do not find that the comments require reversal.[5]
Turner argues that the prosecution made improper remarks in closing argument by referencing another case that was lost by the prosecution and contrasted "the jurors' sense of community safety with the defendant's armed robbery." In his pro se brief, Turner objected to the following statement by the prosecution:
I wanted to ask (that jury) what about the public that the defendant was going to return to out in the world. There [sic] safety's at risk too.
Turner claims these comments interjected issues having no bearing on his guilt or innocence and improperly appealed to the jury to act in ways other than as dispassionate arbiters of the facts. Turner urges that the case against him was not strong and depended on a credibility determination. He maintains that the prosecutor implied *1217 that the jury would be violating its oath if they failed to convict. According to Turner, the prosecutor's comments aroused the jury's passions and prejudices against him and caused the jury to decide the case on the basis of extraneous considerations.
The complete transcript of the comments complained of reads as follows:
Judge Manning will give you instruction. And I want to remind each of you swore an oath, swore an oath to follow the law and apply that law to the evidence you saw. What you will not hear from Judge Manning is not part of the law. It's not your duty to come up with law or different circumstances back there to apply to this case. Just what you hear from the jury instructions he'll read you. Otherwise you'll be violating your oath. So. Like we told you in voir dire that you are not allowed to be Defendant. [sic] I told you that for a reason. I had a jury trial. We proved our case beyond a reasonable doubt. The jurors believed it. But they felt sympathy for the Defendant because the police had been rude to him. And they ignored their oaths. And that jury trial, the victim, a female was kidnapped at gunpoint. And that the Defendant, when caught confessed. Said he did it. But the jury ignored the confession. They thought the police were rude to him. In that case they violated their oaths. I know you will not do the same. I wanted to ask what about the victim in this case? What about the victim, that female who was kidnapped at gunpoint? I wanted to ask what about the public that the Defendant was going to return to out in the world? They're [sic] safety's at risk too. But I take partial responsibility for that trial. Full responsibility. I take full responsibility. I did not voir dire on oaths to the jury. I didn't tell them how important that that was. What have I done every time since? Voir dired on oath. I told them it was all about the oath at the beginning of the trial. About voir dire. And I've done that every time. And I know that you will not violate your oath.
Before the trial began, the trial judge instructed the jury that the closing arguments are not evidence. Also, in the jury instructions, given to the jury after the close of the evidence, the trial court informed the jury that the opening statements and closing arguments made by the prosecutor and the defendant's attorney are not evidence and cannot be considered as such.
The comments quoted above merely admonish the jury to comply with their duty to fairly consider the evidence and testimony and to render a decision in accordance with the law. We do not find that the comments are an unfair attempt to appeal to the passions or prejudices of the jury. Further, even if the comments did exceed the proper bounds of a closing argument, the evidence of Turner's guilt presented to the jury was substantial. As discussed above, the jury had abundant evidence to convict Turner of this armed robbery and the statements by the prosecution in the closing argument did not contribute to the verdict. Therefore, we reject Turner's argument.
CONCLUSION
For the reasons stated above, we affirm the conviction and sentence of the defendant, Ollandis Derrell Turner, for armed robbery.
AFFIRMED.

On May 24, 2017, the bill of information was amended to add a charge of one count of illegal possession of stolen things. However, Turner was only tried for armed robbery.

There is some uncertainty regarding the spelling of Turner's middle name. On the bill of information and on his pro se brief, it is spelled "Derrell." Turner signed the pro se brief "Ollandis D. Turner." On his Louisiana identification card, the middle name is spelled "Darrell." In his presentence investigation report, both spellings are used interchangeably.

No motion to suppress or other objection was filed in the trial court regarding the photographic lineup. A defendant who does not file a motion to suppress an identification, and who fails to contemporaneously object to the admission of the identification testimony at trial, fails to preserve the issue of its admissibility as an error on appeal. La. C. Cr. P. art. 703(F) ; La. C. Cr. P. art. 841(A) ; State v. Johnson , 95-711 (La. App. 3 Cir. 12/6/95), 664 So.2d 766, writ denied , 96-0082 (La. 3/29/96), 670 So.2d 1236. However, because Turner has also argued in his pro se brief that his trial counsel was ineffective for failing to file a motion to suppress the photographic lineup or to object to its introduction at trial, we will consider the issue. See and compare State v. Johnson , supra .

See and compare State v. Doucette , supra , in which a cross tattoo between the defendant's eyes did not render his picture in a photo lineup to be unduly suggestive. See also State v. James , 431 So.2d 1075 (La. App. 2 Cir. 1983), writ denied , 439 So.2d 1076 (La. 1983) ; State v. Buchanan , 463 So.2d 660 (La. App. 4 Cir. 1985).

Turner did not argue that the failure to object to the comments during closing argument constituted ineffective assistance of counsel. However, such a claim would be meritless. As stated herein, the comments did not prejudice the jury. The failure to establish prejudice relating to these issues precludes a claim of ineffective assistance of counsel under Strickland v. Washington , supra .See State v. McGuffie , 42,536 (La. App. 2 Cir. 9/26/07), 2007 WL 2783383, writ denied , 2007-2232 (La. 4/4/08), 978 So.2d 325.