Judgment rendered February 28, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,579-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

JOHN ARTHUR THOMAS                          Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 378,864

Honorable Michael A. Pitman, Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By: Paula C. Marx

JAMES E. STEWART, SR.                Counsel for Appellee
District Attorney

VICTORIA T. WASHINGTON
ALLISON MELTON-GRIFFIN
Assistant District Attorneys

* * * * *

Before COX, THOMPSON, and HUNTER, JJ.

**COX, J.**

The case arises out of the First Judicial District Court, Caddo Parish, Louisiana. John Arthur Thomas was found guilty of simple burglary of an inhabited dwelling by a unanimous jury and sentenced to 12 years' imprisonment at hard labor. He now appeals his conviction and sentence. We affirm his conviction and amend his sentence.

### FACTS

On November 9, 2020, Thomas was charged by bill of information with one count of simple burglary of an inhabited dwelling in violation of La. R.S. 14:62.2.

At trial, Ms. Silesia Brice testified that at 5:50 p.m. on April 4, 2020, she left her son, Darion Coney, at home while she ran an errand. She stated that when she returned home, her son was standing in the street and told her that someone tried to break into the house. She testified that she had a Ring surveillance camera that recorded her leaving the house and a man walking up her driveway. The video was played for the jury.

Ms. Brice believed the intruder was watching her because he walked up to the house after she drove away. She testified that the intruder removed the screen from her bathroom window, climbed through the bathroom window, and knocked off the items that were on her window sill. She stated that police found a cell phone near the window screen that had been removed and she informed them that she did not know to whom the phone belonged.

On cross-examination, Ms. Brice stated that her bathroom window was open at the time the screen was removed and the intruder entered. She admitted that she was not home when the incident happened and did not actually see the intruder enter.

Mr. Coney testified that on April 4, 2020, he was in the living room playing a game when he heard what sounded like something falling from his mother's room. He stated that he thought it could have been his mother, so he called out her name three times, but no one answered. He stated that he walked into her bathroom and saw someone coming through the window. Mr. Coney described the intruder as having dark skin and black dreads mixed with red or light brown. Mr. Coney recalled identifying the intruder in a photo lineup for the police. He reviewed the photo lineup on the stand and identified Thomas as the intruder, and he also identified Thomas as the intruder in open court. He stated that on the day he identified Thomas for the police, he was 80 percent certain he was the intruder, and in court, he was 100 percent certain.

Corporal Anthony Murphy with the Shreveport Police Department ("SPD") testified that on the day of the intrusion, he was dispatched to the residence. He stated that when he arrived, he spoke with Ms. Brice and Mr. Coney, surveyed the area, and checked the bathroom. He testified that he saw a broken vase inside the bathroom, a vase sitting outside the bathroom window, and a cell phone outside the bathroom window. He stated that the window was all the way open and the screen was sitting outside. Cpl. Murphy testified that he followed standard procedure in bagging the cell phone as evidence and filing it in the evidence room. On cross-examination, Cpl. Murphy testified that he was unable to get any fingerprints from the cell phone or crime scene.

Corporal Jeremy Jordan testified that he works in the SPD Digital Forensics Unit. He stated that he reviewed the cell phone found at the scene and found a selfie picture of a black man with dreadlocks and facial hair. Cpl.

Jordan identified Thomas as the man in the picture. The picture was shown to the jury and entered into evidence.

SPD Detective Leeann Hodges testified that she was assigned to this case on April 6, 2020. She stated that she reviewed Cpl. Murphy's report and conducted a follow-up interview with the victims. She testified that she reviewed the surveillance video and pulled the cell phone from the evidence room. She stated that upon turning on the cell phone, an email alert to JohnAThomas66@gmail.com appeared. She testified that she ran that name through their database, found a profile for John Arthur Thomas, and printed his driver's license photo. Det. Hodges stated that she obtained a search warrant for the phone and turned it over to Cpl. Jordan for a forensic search. She stated that once Cpl. Jordan pulled information and photos from the phone, she compared those photos to the driver's license photo and found them to be a match.

Det. Hodges stated that after she identified Thomas in the cell phone photos, she pulled a six-person photo lineup for Mr. Coney to identify the intruder. Det. Hodges testified that after Mr. Coney positively identified Thomas as the intruder, she contacted Thomas via a phone number she obtained through his probation and parole officer. She testified that during their conversation, Thomas informed her that his phone had been stolen two weeks prior; however, Thomas stated that a white iPhone was stolen, not a white LG phone, which was found at the scene. Det. Hodges stated that the phone conversation ended when Thomas stated she was asking too many questions and hung up on her.

On cross-examination, Det. Hodges read the portion of her report that described the intruder in the surveillance video. She stated, "The black male

3

appeared to have a small 'fro on his head with dreads on the side that appeared to be shoulder length. The male appeared to be approximately six foot tall, and … weigh approximately 180 pounds, with an approximate age of 40." Det. Hodges then read from a supplemental report that Thomas was "6'5", 265 pounds, black hair, long dreads, brown eyes with facial hair," and born in 1966.

The State rested after Det. Hodges' testimony and the Defense did not present any witnesses. The jury unanimously found Thomas guilty as charged of simple burglary of an inhabited dwelling. Thomas filed a motion for new trial and post verdict judgment of acquittal. At the hearing on the motions, the trial court stated, "The Court finds that the evidence was very strong in favor of the defendant's guilt and denies the Motion for New Trial and Motion for Post-Verdict Judgment of Acquittal."

At the sentencing hearing, Defense Counsel stated that Thomas did not accept any offers by the State. The trial court articulated the La. C. Cr. P. art. 894.1 factors and sentenced Thomas to 12 years at hard labor without the benefit of probation, parole, or suspension of sentence. Thomas now appeals.

## DISCUSSION

*Insufficient Evidence*

Thomas argues that there was insufficient evidence to prove his guilt. He notes the following evidence or lack thereof: no DNA or fingerprint evidence submitted to prove he was at the scene; Mr. Coney was only 80 percent sure it was Thomas after the incident but 100 percent sure at trial; no proof that the cell phone left at the scene was his at the time of the incident because his had been stolen; and Det. Hodges' initial observations of the

4

video differed from her subsequent report. Thomas argues that his identification was not reliable and there was a substantial likelihood of misidentification.

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Tate*, 01-1658 (La. 5/20/03), 851 So. 2d 921, *cert. denied*, 541 U.S. 905, 124 S. Ct. 1604, 158 L. Ed. 2d 248 (2004); *State v. Robinson*, 50,643 (La. App. 2 Cir. 6/22/16), 197 So. 3d 717, *writ denied*, 16-1479 (La. 5/19/17), 221 So. 3d 78. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the factfinder. *State v. Pigford*, 05-0477 (La. 2/22/06), 922 So. 2d 517; *State v. Robinson, supra*. The appellate court does not assess the credibility of witnesses or reweigh evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442; *State v. Turner*, 52,510 (La. App. 2 Cir. 4/10/19), 267 So. 3d 1202, *writ denied*, 19-00873 (La. 9/24/19), 279 So. 3d 386.

The *Jackson* standard is applicable in cases involving both direct and circumstantial evidence. *State v. Robinson, supra*. Direct evidence provides proof of the existence of a fact, for example, a witness's testimony that he saw or heard something. *State v. Wooten*, 51,738 (La. App. 2 Cir. 2/13/18), 244 So. 3d 1216. Circumstantial evidence is defined as evidence of facts or circumstances from which one might infer or conclude the existence of other connected facts. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred

5

according to reason and common experience. *State v. Walker*, 51,217 (La. App. 2 Cir. 5/17/17), 221 So. 3d 951, *writ denied*, 17-1101 (La. 6/1/18), 243 So. 3d 1064.

An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. *State v. Sutton*, 436 So. 2d 471 (La. 1983); *State v. Robinson, supra*.

Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. *State v. Robinson, supra*; *State v. Allen*, 36,180 (La. App. 2 Cir. 9/18/02), 828 So. 2d 622, *writs denied*, 02-2595 (La. 3/28/03), 840 So. 2d 566, 02-2997 (La. 6/27/03), 847 So. 2d 1255, *cert. denied*, 540 U.S. 1185, 124 S. Ct. 1404, 158 L. Ed. 2d 90 (2004). A reviewing court accords great deference to the factfinder's decision to accept or reject the testimony of a witness in whole or in part. *State v. Robinson, supra*; *State v. Sims*, 49,682 (La. App. 2 Cir. 2/27/15), 162 So. 3d 595, *writ denied*, 15-0602 (La. 2/5/16), 186 So. 3d 1161. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. *State v. Robinson, supra*.

When the key issue is the defendant's identity as the perpetrator, rather than whether the crime was committed, the State is required to negate any

reasonable probability of misidentification. Positive identification by only one witness is sufficient to support a conviction. It is the factfinder who weighs the respective credibility of the witnesses, and this Court will generally not second-guess those determinations. *State v. Hughes*, 05-0992 (La. 11/29/06), 943 So. 2d 1047; *State v. Turner, supra*; *State v. Robinson, supra.*

La. R.S. 14:62.2(A) provides:

> Simple burglary of an inhabited home is the unauthorized entry of any inhabited dwelling, house, apartment, or other structure used in whole or in part as a home or place of abode by a person or persons with the intent to commit a felony or any theft therein, other than as set forth in R.S. 14:60.

In order to convict an accused of simple burglary of an inhabited dwelling, the State must prove: (1) there was an unauthorized entry, (2) the structure was inhabited at the time of entry, and (3) the defendant had the specific intent to commit a felony or theft inside the structure. *State v. Kirby*, 53,661 (La. App. 2 Cir. 1/13/21), 309 So. 3d 946, *writ denied*, 21-00254 (La. 5/11/21), 315 So. 3d 868.

A defendant's intent to commit burglary of an inhabited dwelling may be inferred from circumstances surrounding the commission of the offense. *Id.*; *State v. Mitchell*, 50,188 (La. App. 2 Cir. 11/18/15), 181 So. 3d 800, *writ denied*, 15-2356 (La. 1/9/17), 214 So. 3d 863.

Entry is accomplished whenever any part of the defendant's person passes the line of the threshold. It is sufficient that any part of the person intrudes even momentarily, into the structure. *State v. Kirby, supra*.

In the case before us, the home was inhabited by Ms. Brice and Mr. Coney. Thomas was identified in a photo lineup by Mr. Coney as the unauthorized person who knocked items off the bathroom window as he

attempted to enter the house. Although he was unable to fully enter the home, a portion of Thomas's upper body crossed the threshold when he tried to enter through the window. Therefore, the first two elements are met.

As to intent, the jury is able to infer from the circumstances whether the defendant intended to commit a felony or theft. Here, the jury could infer Thomas' intent by his actions. Thomas removed the screen from the bathroom window, removed a vase from the window sill, and tried to crawl through. The jury could easily infer that Thomas had ill intentions, i.e. theft, for entering the home by choosing this method of entry, as opposed to knocking on the front door and being invited inside. The third element of simple burglary of an inhabited dwelling is met.

Thomas argues he was misidentified as the intruder. A cell phone was found at the scene with email notifications to Thomas' email address. Thomas stated that his white iPhone was stolen, not the white LG phone that was found at the scene. Thomas was identified in a photo lineup by Mr. Coney. Surveillance video also showed Thomas walking across the driveway after Ms. Brice pulled out of her driveway.

The jury was in the best position to evaluate Mr. Coney's testimony that Thomas was the intruder. The jury believed Mr. Coney, and his testimony alone was sufficient to support a conviction. The surveillance video and cell phone bolstered Mr. Coney's identification of Thomas as the intruder. Based on our complete review of the record, we affirm Thomas' conviction for simple burglary of an inhabited dwelling.

*Restriction of Benefits*

Thomas also asserts that restrictions should not have been added to his sentence as they are not authorized by law. Thomas requests that his

8

conviction and sentence be vacated.  In the alternative, he requests his sentence be amended to remove the restriction of benefits.  The State agrees with Thomas' assertion that his sentence is illegal due to the restriction of benefits.  The State requests that his sentence remain the same, but the restriction should be removed.

Whoever commits the crime of simple burglary of an inhabited dwelling shall be imprisoned at hard labor for not less than one year nor more than twelve years.  La. Rev. Stat. Ann. § 14:62.2(B).  This statute does not include a restriction of benefits.

Thomas was sentenced to 12 years' imprisonment at hard labor without benefits.  Pursuant to La. C. Cr. P. art. 882(A), an illegal sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review.  We affirm Thomas' sentence of 12 years at hard labor but amend it to correct the improper restriction of benefits.  The trial court is instructed to make an entry in the minutes reflecting this amendment.

## CONCLUSION

John Thomas' conviction for simple burglary of an inhabited dwelling is affirmed.  His sentence is amended to remove the restriction of benefits.

**AFFIRMED IN PART; AMENDED IN PART; AND AS AMENDED, AFFIRMED.**